**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>    Plaintiffs,<br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah Corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., a Utah Corporation; COLLEGEAMERICA DENVER, INC., a Colorado Corporation; COLLEGEAMERICA ARIZONA, INC., a Colorado Corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation; CARL BARNEY, an individual; and DOES 1-500, Inclusive,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTION REGARDING SCOPE OF DISCOVERABLE INFORMATION (ECF NO. 356) AND MOTION TO COMPEL DOCUMENTS RELATING TO DEFENDANTS' TRANSACTIONS (ECF NO. 347)**<br><br>Case No. 2:15-cv-00119-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

On September 22, 2017, after oral argument, the Court took under advisement Katie Brooks and Nannette Wride's ("Brooks and Wride") (1) Motion Regarding Scope of Discoverable Information (ECF No. 356) and (2) Motion to Compel Documents Relating to Defendants' Transactions ("Motion to Compel") (ECF No. 347).

## I.     <u>Motion Regarding Scope of Discoverable Information (ECF No. 356)</u>

With respect to the motion regarding the scope of discovery, the parties filed ten page briefs setting forth their arguments on the proper scope of temporal discovery in this case. (ECF Nos. 345 & 349.) Brooks and Wride argue that certain discovery before 2007 and after 2011 is relevant and that Stevens-Henager College, Inc., California College San Diego, Inc., Collegeamerica Denver, Inc., Collegeamerica Arizona, Inc., Center For Excellence In Higher Education, Inc., and Carl Barney (the

1

"Stevens-Henager Defendants") should produce it. (ECF No. 345.) Specifically, Brooks and Wride claim that pre-2007 discovery is relevant because, while the applicable statute of limitations period begins January 3, 2007, the Program Participation Agreements ("PPA") that cover the period from January 3, 2007 through June 30, 2007 date from 2001. (Id. at 7-9.) Brooks and Wride contend that under the applicable law, each claim for payment under the 2001 PPAs made from January 3, 2007 through June 30, 2007 remain actionable. (Id.) Brooks and Wride further assert that to prove their claims relating to the January 3, 2007 to June 30, 2007 period, they must show fraudulent inducement of the PPAs executed in 2001, which requires the discovery of documents and information prior to 2007. (Id.) Further, Brooks and Wride assert that violations subsequent to the execution of those pre-2007 PPAs provide circumstantial proof of the Stevens-Henager Defendants' intent when they entered into the later PPAs. (Id.)

The Stevens-Henager Defendants counter that the limitations period defines the scope of discovery. (ECF No. 349 at 7-9.) Specifically, the Stevens-Henager Defendants assert the relevant limitations period cuts off Brooks and Wride's claims prior to PPAs fraudulently induced during and after 2007. (Id.) The Stevens-Henager Defendants, therefore, assert that the Court should prohibit discovery regarding actions prior to January 1, 2006, which allows Brooks and Wride substantial opportunity to discover information relevant to the Stevens-Henager Defendants' intent entering into the 2007 and later PPAs. (Id.)

As to discovery after 2011, Brooks and Wride argue that they should receive post-2011 documents and information because their operative Third Amended

Complaint ("Complaint") contains allegations concerning events and violations occurring after 2011. (ECF No. 345 at 9-11.) Brooks and Wride acknowledge that the Court's March 30, 2016 Order on the Stevens-Henager Defendants' motion to dismiss found that evidence of false certifications and violations did not provide an independent basis for its False Claims Act ("FCA") claims. (Id.) However, Brooks and Wride assert such evidence remains relevant and discoverable because the Court found false certifications and violations after entry into the PPAs may provide "circumstantial proof" that the Stevens-Henager Defendants entered into the PPAs to become eligible for Title IV funding with no intention of following through on their promises to comply with program requirements. (Id.)

Brooks and Wride's brief states that the Stevens-Henager Defendants had not committed to produce documents and information through December 2012. (ECF No. 345 at 5 n.1.) The Stevens-Henager Defendants, however, concede the relevance of documents and information from 2012 in their brief and "ask the Court to limit the scope of discovery on Relators' FCA claims to December 31, 2012." (ECF No. 349 at 7.) Therefore, the parties do not dispute the relevance of discovery from 2007 through December 31, 2012. The Stevens-Henager Defendants do contend that the Court's March 30, 2016 Order found Brooks and Wride had not alleged FCA violations after 2011, and that Brooks and Wride, therefore, should not receive discovery after December 31, 2012, the date by which all actionable PPAs expired. (Id. at 4-7.)

Brooks and Wride ask the Court to "not artificially or mechanically limit Brooks and Wride's discovery of information to any specific period of time" and instead "evaluate the relevancy and proportionality of Brooks and Wride's discovery requests on

3

a case-by-case basis." (ECF No. 345 at 11.) The Stevens-Henager Defendants, on the other hand, ask the Court to "enter an order limiting the scope of discovery for Relators' FCA claims to January 1, 2006, to December 31, 2012." (ECF No. 349 at 10.)

For the reasons addressed below, the Court declines to limit discovery in this case to a specific period. Certain pre-2007 discovery relates to Brooks and Wride's claims concerning the period between January 3, 2007 and June 30, 2007. In addition, certain post-2011 discovery is relevant because Brooks and Wride's Complaint includes allegations after that period, and subsequent false certifications and violations provide circumstantial proof supporting the fraudulent inducement claims. The Court's discussion below provides a framework for the parties to negotiate the production of documents responsive to particular requests in Brooks and Wride's Sixth Set of Discovery Requests and other discovery requests. However, if the parties reach an impasse on any specific issues or document requests, they may file Short Form Discovery Motions consistent with DUCivR 37-1.

**A. March 30, 2016 Order**

One of the primary disputes between the parties concerning the temporal scope of discovery centers on their differing interpretations of the Court's March 30, 2016 Order on the Stevens-Henager Defendants' motion to dismiss. The parties disagree on whether the Court's Order limits Brooks and Wride's claims to 2011 and earlier. The Stevens-Henager Defendants interpret the Order as affirmatively determining that Brooks and Wride have not alleged FCA violations after 2011 in their Complaint, and therefore, cannot pursue claims beyond this time. (ECF No. 349 at 3-7.) Brooks and

4

Wride disagree and point to various allegations in their Complaint relating to events and violations occurring after 2011.  (ECF No. 345 at 3-5.)

In the March 30, 2016 Order, the Court, for purposes of deciding the Stevens-Henager Defendants' motion to dismiss, interpreted the Complaint as alleging FCA violations from 2002 to 2011.  (March 30, 2016 Order, ECF No. 245 at 2, 3, 4-5 n.3, & 11 n.6.)  However, the Stevens-Henager Defendants did not move to dismiss any claims after 2011 (see ECF No. 198), despite the presence of allegations in the Complaint relating to post-2011 events.  (See Compl., ECF No. 175 ¶¶ 310, 315, 317, 327, 348, 387.)  Rather they simply sought dismissal of the entire Complaint.  (See ECF No. 198.)  The Court did not have in front of it the dispute raised in this Motion regarding the propriety of claims after 2011.  Thus the Court's Order made no specific determination as to whether Brooks and Wride could maintain claims after 2011 and simply discussed the claims at issue, which it describes as occurring prior to the 2011 PPA amendments.  This Court declines to limit Brooks and Wride's claims to 2011 or earlier through a ruling on the scope of discovery when the District Court has not squarely ruled on the issue, and the Complaint includes claims after that date.

### B. Pre-2007 Discovery

1. 2001 PPA

The parties agree that the statute of limitations period in this case began to run January 3, 2007, (August 28, 2017 Order, ECF No. 346), but disagree as to the effect of the statute of limitations on Brooks and Wride's claims.  Brooks and Wride argue they can recover under the 2001 PPAs for each claim for payment made from January 3, 2007 to June 30, 2007, when the 2001 PPAs were still in effect.  (ECF No. 345 at 7-9.)

5

Brooks and Wride, therefore, assert the relevance of discovery relating to PPA-entry in 2001 because they must show that the Stevens-Henager Defendants induced the original contract, i.e., the 2001 PPA, through fraud. (Id.) The Stevens-Henager Defendants argue, however, that the statute of limitations prevents Brooks and Wride from recovering under the PPAs entered prior to January 3, 2007. (ECF No. 349 at 7-9.) Brooks and Wride make the better argument.

The parties agree Brooks and Wride may pursue their FCA claims under a fraudulent inducement theory. Under this theory, Brooks and Wride must prove the existence of initial false statements or fraudulent conduct that induced the government to enter into the contracts at issue. See, e.g., In re Baycol Prods. Litig., 732 F.3d 869, 876 (8th Cir. 2013) ("a claim alleging fraud in the inducement of a government contract does focus on the false or fraudulent statements which induced the government to enter into the contract at the outset."). However, under this theory, "FCA liability attaches to 'each claim submitted to the government under a contract so long as the original contract was obtained through false statements or fraudulent conduct.'" United States ex rel. Miller v. Weston Educ., Inc., 840 F.3d 494, 499 (8th Cir. 2016) (quoting Baycol, 732 F.3d at 876); see United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1173 (9th Cir. 2006) (noting FCA "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct"); United States ex rel. Longhi v. United States, 575 F.3d 458, 468 (5th Cir. 2009) ("Under a fraudulent inducement theory, although the Defendants' 'subsequent claims for payment made under the contract were not literally false, [because] they derived from the original

6

fraudulent misrepresentation, they, too, became actionable false claims.'") (alteration in original) (quoting United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co., 491 F.3d 254, 259 (5th Cir. 2007)); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 787 (4th Cir. 1999) ("In [fraudulent inducement] cases, courts, including the Supreme Court, found False Claims Act liability for each claim submitted to the government under a contract, when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct." (citing United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943))).

Furthermore, in United States ex rel Hooper v. Lockheed Martin Corporation, the Court addressed a situation similar to the one here, where the defendant submitted the original allegedly fraudulent proposal to the government in 1995, well outside the applicable limitations period. No. CV 08-00561 (BRO) (PJWx), 2014 WL 12561070, at *4-*5 (C.D. Cal. Jan. 17, 2014) (unpublished), aff'd sub nom. Hooper v. Lockheed Martin Corp., 640 F. App'x 633 (9th Cir. 2016) (unpublished). In that case, the defendant argued that the alleged FCA violation occurred when it submitted the original proposal to the government in 1995. See id. The court rejected this argument, finding the claims for payment submitted within the six-year limitations period actionable, even though the defendant submitted the original proposal outside the limitations period. See id. at *5 ("Accordingly, the triggering event was not the submission of allegedly fraudulent underbid, but its submission of invoices for payment on that fraudulent underbid.").

The Stevens-Henager Defendants do not cite any contrary authority. The cases they cite stand for the proposition that under the fraudulent inducement theory, liability stems from the fraud surrounding entry into the original contract. (ECF No. 349 at 8-9.)

7

While true, the cases cited above also indicate Brooks and Wride must show an original false statement or fraudulent conduct that induced the government to enter into the PPAs. However, as the cases cited above state, when the defendant obtained the original contract through fraud, liability attaches to each subsequent payment. None of the cases cited by the Stevens-Henager Defendants finds liability attaches to payments made during the relevant limitations period only if the parties entered into the original fraudulently induced contract during the limitations period. Indeed, the case closest to this proposition is Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737 (2d Cir. 1979) (applying New York law). However, even Triangle acknowledges that the fraudulent inducement "cause of action accrues when the document is executed and when the party alleging fraud has given consideration and thus suffered damage." 604 F.2d at 748 (emphasis added). Triangle involved a contract with an upfront payment. By contrast this case involves payment in installments over time. Thus Triangle does not conflict with the proposition that each payment on a fraudulently induced PPA creates new liability.

Consistent with the case law set forth above, the approximately 690 claims for payment that the Stevens-Henager Defendants submitted to the government between January 3, 2007 and June 30, 2007 are actionable. However, to prove fraudulent inducement as to these claims for payment, Brooks and Wride must prove that the Stevens-Henager Defendants made initial false statements or engaged fraudulent conduct that induced the government to enter into the 2001 PPAs, which cover the claims made from January 3, 2007 through June 30, 2007. Therefore, information and

8

documents relating to the Stevens-Henager Defendants' entry into the 2001 PPAs are relevant and discoverable.

        2. Compensation Plan

In a further attempt to prove "that Defendants did not intend to comply with the PPA's terms at the time of entry," (ECF No. 349 at 8 (emphasis removed)), Brooks and Wride seek pre-2007 discovery relating to the Stevens-Henager Defendants' development of their compensation plan. (ECF No. 345 at 3, 5-6.) The compensation plan plays a key role in the case because in the PPAs, schools must agree that they will not pay commissions, bonuses, or other incentive payments based on success in recruiting students. Brooks and Wride point out that the Stevens-Henager Defendants have asserted, as an affirmative defense, that they did not have the requisite intent because they relied on the advice of counsel to develop their compensation system. (Id.)

The Stevens-Henager Defendants' interrogatory responses state that they first developed components of the compensation plans at issue around 2000 and later evaluated them for revision in May 2003 and January 2004. (ECF No. 345-1.) The interrogatory responses further state that the Stevens-Henager Defendants relied on the input of industry professionals when they originally developed the compensation plan in 2000 and evaluated it for modification in 2003 and 2004, and that they sought the advice of counsel about the compensation plan in 2007 and 2010. (Id.) Brooks and Wride also state that they particularly need discovery on the 2000 compensation plan because the Stevens-Henager Defendants contend they developed their compensation

9

plan to comply with the regulatory safe harbor, prior to the public announcement of the safe harbor in 2002.  (ECF No. 345 at 3, 6.)

The Stevens-Henager Defendants appear to concede the relevance of the pre-2007 compensation plans, stating that they "have produced versions of the compensation plan developed before 2007 and have answered interrogatories describing Defendants' initial development and subsequent evolution of the plan before 2007."  (ECF No. 349 at 10.)

Information and documents relating to the development of the compensation plan in 2000 are also relevant and discoverable.  As an initial matter, the 2000 compensation plan could show the Stevens-Henager Defendants' intentions regarding complying with the terms of the 2001 PPAs, which is at issue as noted above.  Moreover, discovery concerning the development of the compensation plan in 2000 implicates the Stevens-Henager Defendants' good faith reliance on professionals defense.  The Stevens-Henager Defendants cannot on one hand claim they lacked the requisite intent not to comply with the PPA terms because they relied in good faith on the advice of professionals in developing the compensation plan, yet block discovery bearing on that defense.  Likewise, the 2003 and 2004 evaluations and revisions to the compensation plan are also relevant because of the Stevens-Henager Defendants' good faith reliance defense.  Moreover, those revisions may be relevant later compensation plans and PPAs.

    3. Subsequent Violations

Brooks and Wride also argue that "[s]ince several of the operative PPAs were executed before 2007, Defendants' violations subsequent to the execution of those pre-

2007 PPAs are circumstantial proof of Defendants' intent when they entered into those specific PPAs, even if Defendants cannot be held directly liable for those violations as a result of the statute of limitations." (ECF No. 345 at 7.) The Court agrees. The March 30, 2016 Order found that evidence of subsequent false certifications and violations may provide circumstantial evidence of the Stevens-Henager Defendants' intent not to comply with the terms of the PPAs:

> Although evidence of subsequent false certifications and affirmative attempts to cover up such violations—such as failing to comply with the 90/10 Rule and other accreditation regulations—are not an independent basis for showing a false or fraudulent claim, this evidence may nonetheless provide circumstantial proof that Defendant Schools and Mr. Barney knowingly entered into the PPAs to become eligible for Title IV funding with no intention of following through on their promise to comply with program requirements.

(March 16, 2016 Order, ECF No. 245 at 20-21 n.11; see also id. at 33 n.19.)

Given that the 2001 PPAs remain at issue for the reasons discussed above, the Court permits Brooks and Wride to take discovery concerning alleged false certifications and violations, including any relating to the 90/10 Rule or incentive compensation ban, occurring after entry into the 2001 PPAs. This discovery may provide circumstantial proof of the Stevens-Henager Defendants' intent not to comply with the PPA terms when entering into those PPAs.

### C. Post-2011 Discovery

The Stevens-Henager Defendants concede the relevance of discovery through December 31, 2012. (ECF No. 349 at 7.) However, the parties disagree on the relevance of any discovery beyond that date, and the Stevens-Henager Defendants ask the Court to limit discovery to December 31, 2012. As addressed above, the Court will not limit discovery to before December 31, 2012 based on the Court's March 30, 2016

11

Order.  Importantly, the Complaint contains a number of allegations relating to events occurring after 2011.  (See Compl., ECF No. 175 ¶¶ 310 (alleging ICB violations in 2012), 315 (alleging 90/10 rule violations in 2012), 317 (alleging 90/10 rule violations in 2014), 327 (alleging attendance violations through October 2013), 348 (alleging academic progress violations through October 2013), 387 (alleging 90/10 rule violations in 2012).)  In addition, the Complaint repeatedly alleges a fraudulent course of conduct "to at least 2011."  (Id., ¶¶ 5, 138, 504, 518, 530, 542.)  The "at least" language indicates that Brooks and Wride assert claims through 2011 at a minimum, not to 2011 only.

The Stevens-Henager Defendants also argue that courts limit discovery in qui tam actions to the specific period of a relator's employment or to the specific allegations in the complaint.  (ECF No. 349 at 4.)  While maintaining this ground does not supply the primary basis for their objections to Brooks and Wride's discovery requests, the Stevens-Henager Defendants cite to a case that states the holding of another case in which the court limited discovery to the specific period of the relator's employment.  (ECF No. 349 at 4 n.2.)  Brooks and Wride, on the other hand, cite to cases in which courts rejected arguments that they should limit discovery to the duration of a relator's employment.  (ECF No. 345 at 9-10.)

As an initial matter, the court in the case the Stevens-Henager Defendants cite actually rejects the reasoning of the quoted case and declines to impose discovery standards in qui tam actions more stringent than those provided for in the Federal Rules of Civil Procedure.  See United States ex rel. McCartor v. Rolls-Royce Corp., No. 1:08-CV-00133-WTL-DML, 2013 WL 5348536, at *3-*5 (S.D. Ind. Sept. 24, 2013)

12

(unpublished) (citing United States ex rel. Lusby v. Rolls-Royce Corp., No. 1:03-cv-680-SEB-WGH (S.D. Ind. July 12, 2010) (unpublished) and noting why it does not apply). Moreover, the Court finds persuasive the reasoning from the cases declining to limit discovery to the duration of a relator's employment. Specifically,

> Limiting a relator's discovery rights to the duration of her employment would weaken the Act by placing limits on qui tam actions that do not exist for government-initiated actions. Additionally, it would dissuade whistleblowing by limiting a relator's claim, not to the plausible allegations regarding the submission of false claims—which is the Act's focus—but to the duration of the relator's employment, on which the Act is silent.

United States ex rel. Fiederer v. Healing Hearts Home Care, Inc., No. 2:13-CV-1848-APG-VCF, 2014 WL 4666531, at *5 (D. Nev. Sept. 18, 2014) (unpublished).

The Court also agrees with the principle that the specific examples of fraudulent behavior pled in the Complaint do not strictly limit discovery to those acts. Brooks and Wride allege an ongoing fraudulent scheme, which entitles them to discover additional facts pertaining to the claims pled.

> It is unreasonable, in this judge's view, to impose a limit on discovery and recovery in qui tam cases to specific examples of fraudulent behavior that relators were able to describe in their complaint when-as in this case-the complaint describes a general fact pattern of alleged fraudulent behavior supported by specific examples of that behavior. The court sees no good reason to prevent a relator from discovering other examples of behavior substantially similar to those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused.

See, e.g., McCartor, 2013 WL 5348536, at *6.

At the September 22, 2017 hearing on this matter, Brooks and Wride represented that when they filed their Complaint, they did not have all of the PPAs and did not know when they were signed. In addition, Brooks and Wride state that they discovered additional evidence bearing on their claims after filing the Complaint,

13

including a compensation plan adopted in 2012, which tied compensation directly to enrollments. (ECF No. 345 at 5; ECF No. 345-2, Ex. B.) Brooks and Wride do not have to amend their Complaint each time they uncover new facts during the discovery process pertaining to the alleged fraudulent scheme set forth in the Complaint. Rather, Federal Rule of Civil Procedure 26(e) sets forth the continuing disclosure requirements in a civil case.

Accordingly, the Court will not limit discovery to December 31, 2012. Post-2012 information and documents are relevant and discoverable to the extent they bear on Brooks and Wride's claims concerning the alleged fraudulent scheme at issue and the Stevens-Henager Defendants' defenses. Moreover, evidence of post-2012 false certifications and violations are relevant and discoverable, as they may provide circumstantial proof of the Stevens-Henager Defendants' intent not to comply with the PPAs when entered.

## II. Motion to Compel Documents Relating to Defendants' Transactions (ECF No. 347)

Brooks and Wride also filed a separate Motion to Compel seeking production of documents relating to the 2012 sale of Stevens-Henager College, Inc., California College San Diego, Inc., Collegeamerica Denver, Inc., and Collegeamerica Arizona, Inc. ("Defendant Schools") from Defendant Carl Barney to another Defendant, Center for Excellence in Higher Education ("CEHE"). (ECF No. 347.) Specifically, Brooks and Wride seek documents from the Stevens-Henager Defendants (1) describing the transaction between Mr. Barney and CEHE relating to the sale (Requests No. 15), (2) showing obligations that CEHE owed to Mr. Barney (Request No. 16), and (3) containing CEHE's corporate bylaws (Request No. 17). (Id. at 3.) Brooks and Wride

claim the requested documents will provide evidence of Defendant Barney's liability and intent and will reveal that Defendant Barney entered into the sale, in part, to avoid the 90/10 Rule. (Id.)

The Stevens-Henager Defendants counter that the Court's March 30, 2016 Order ruled that Brooks and Wride's Complaint does not allege FCA violations after 2011, so the sale of the Defendant Schools in 2012 lacks relevance. (ECF No. 355.) The Stevens-Henager Defendants further explain they did not produce the requested documents because they are not relevant as Mr. Barney sold the Defendant Schools to CEHE on December 31, 2012, and those Defendant Schools operated "under PPAs entered <u>after</u> 2011 and outside the period of Relators' FCA claim."[1] (ECF No. 355 at 2.)

The Court grants in part Brooks and Wride's motion to compel the production of documents relating to the sale of the Defendant Schools from Mr. Barney to CEHE in 2012.

Brooks and Wride's Complaint asserts claims after 2011, and certain of the requested documents are relevant to Mr. Barney's liability and intent. However, Brooks and Wride's requests are overbroad, and Court limits the documents the Stevens-Henager Defendants must produce in response as addressed below.

As addressed above, the Court will not limit discovery in this case to December 31, 2012 or earlier. Brooks and Wride's Complaint alleges claims relating to events

---

[1] The Stevens-Henager Defendants' response brief states that Defendant CEHE's involvement in this case is "solely due to successor liability." (ECF No. 355 at 2.) Discussion also occurred on this point during the September 22 hearing. While this assertion would be true if the Court limited Brooks and Wride's claims to 2011 or earlier, it is not the case given that Brooks and Wride's Complaint asserts claims after 2012.

15

after 2012, which includes PPAs entered after 2011. Therefore, the basis for the Stevens-Henager Defendants' objection to producing the requested documents fails.

The Court agrees with Brooks and Wride that certain of the requested documents may show Mr. Barney's potential liability and intent. Specifically, the documents relevant to whether Mr. Barney controlled CEHE even after the sale bear on his liability. Furthermore, the documents may show Mr. Barney had a financial incentive and ability to continue the fraudulent scheme alleged in the Complaint, even after the sale.

However, Brooks and Wride's requests are overbroad. Request No. 15 seeks "[a]ll documents" relating to the sale of Defendant Schools to CEHE. (ECF No. 347-1.) While the Court agrees that the final sale (or transfer) documents themselves are relevant for the reasons noted above, "all documents" could include a substantial number of documents, including e-mails and drafts, which may have no relevance to the issues in this case. Therefore, in response to Request No. 15, the Court orders the Stevens-Henager Defendants to produce the final set of sale (or transfer) documents reflecting the December 31, 2012 transaction(s) between Mr. Barney and CEHE.

Request No. 16 seeks "[a]ll documents" relating to any obligations CEHE owes to Mr. Barney or an entity or trust associated with Mr. Barney, including but not limited to promissory notes and payments. (ECF No. 347-1.) This request for "all documents" is overbroad, as is the request for documents relating any entity or trust "associated" with Mr. Barney. Consequently, in response to Request No. 16, the Court orders the Stevens-Henager Defendants to produce any promissory notes from CEHE to Mr. Barney, or any entity of which he is the primary owner, after December 31, 2012, and

documents sufficient to show all payments from CEHE to Mr. Barney, or any entity of which he is the primary owner, after December 31, 2012.

Request No. 17 seeks all CEHE bylaws from 2005 to the present. (ECF No. 347-1.) Again, this request sweeps too broadly. The sale occurred in December 2012. Therefore, the Court orders the Stevens-Henager Defendants to produce copies of the bylaws in effect on and after the December 31, 2012 sale (or transfer) through the present.

## **ORDER**

The discussion above concerning the temporal scope of discovery in this case should guide the parties in resolving discovery disputes relating to Brooks and Wride's Sixth Set of Discovery Requests, as well as other discovery requests. However, the parties should not interpret the discussion as an invitation for Brooks and Wride to seek all information and documents before 2007 or after 2011, or to otherwise engage in a fishing expedition. Brooks and Wride must narrowly tailor the discovery sought to the claims asserted and the needs of the case. See Fed. R. Civ. P. 26(b). If the parties cannot reach agreement on specific discovery requests, they may file Short Form Discovery Motions pursuant to DUCivR 37-1.

Further, for the reasons stated above, the Court GRANTS IN PART Brooks and Wride's Motion to Compel and ORDERS the Stevens-Henager Defendants to produce documents responsive to Request Nos. 14, 15, and 16 in Brooks and Wride's Sixth Set of Discovery Requests, as limited by the Court.

DATED this 4th day of January, 2018.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge