JOHN W. HUBER, United States Attorney (#7226)
SANDRA STEINVOORT, Assistant United States Attorney (#5352)
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Sandra.Steinvoort@usdoj.gov

CHAD A. READLER, Acting Assistant Attorney General
MICHAEL D. GRANSTON, Director
ALLISON CENDALI, Assistant Director
JAY D. MAJORS, Trial Attorney
JOHN W. BLACK, Trial Attorney
U.S. Department of Justice, Civil Division
175 N Street NE
Washington, DC 20002
Telephone: (202) 307-0264
Jay.Majors@usdoj.gov

Attorneys for the United States

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE, <br><br> Plaintiffs, <br><br> vs. <br><br> STEVENS-HENAGER COLLEGE, INC., et al., <br><br> Defendants. | Case No. 2:15-cv-00119-JNP-EJF <br><br> **UNITED STATES' BRIEF IN RESPONSE TO ORDER (ECF 461)** <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Evelyn J. Furse |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

      A.    It is permissible under the FCA for the Government to intervene in part with
            respect to certain causes of action in a relator's *qui tam* complaint but not others,
            and for the relator to litigate the declined causes of action as a full participant in
            the case. ................................................................................................................. 1

      B.    All of Relators' Amended Complaints have been properly filed and have full legal
            effect. ..................................................................................................................... 7

      C.    The purpose of § 3730(C)(2)(D) is to deter duplicative or wasteful litigation
            tactics on causes of action where the United States has intervened and not a basis
            for shielding a defendant from having to litigate against relators. ........................ 8

      D.    The Tenth Circuit's decision in *Stone* governs here and concludes that the False
            Claims Act does not violate the Take Care Clause of Article II........................... 11

      E.    The Government has exercised oversight over Relators' prosecution of the non-
            intervened claims. ................................................................................................ 18

III.  CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Bowsher v. Synar,*
    478 U.S. 714 (1986)……………………………………………………....…14

*Federal Recovery Servs. Inc. v. United States,*
    72 F.3d 447 (5th Cir. 1995)………………………………………………….....2

*Jones v. Bock,*
    549 U.S. 199 (2007)………………………………………………………………4

*Juliano v. Fed. Asset Disposition Ass'n,*
    736 F. Supp. 348 (D.D.C. 1990)………………………………………….…2

*Mistretta v. United States,*
    488 U.S. 361 (1989)………………………………………………….………..15

*Morrison v. Olson,*
    487 U.S. 654 (1988)………………………………………………….………..14

*Nixon v. Administrator of Gen. Servs.,*
    433 U.S. 425 (1977)……………………………………………….…..13

*NLRB v. Noel Canning,*
    134 S. Ct. 2550 (2014)……………………………………………….…..15

*Ridenour v. Kaiser-Hill Co., LLC,*
    397 F.3d 925 (10th Cir. 2006)…………………………………………16, 17

*Riley v. St. Luke's Episcopal Hosp.,*
    252 F.3d 749 (5th Cir. 2001)………………………………………….……..14, 16

*United States ex rel. Bain v. Georgia Gulf Corp.,*
    No. 01-562-B-3, 2005 U.S. Dist. LEXIS 48559 (June 22, 2005, M.D. La.)…………...…8

*United States ex rel. Becker v. Tools & Metals, Inc.,*
    Nos. 3:05-CV-0627-L, 3:05-CV-2301-L,
    2009 WL 855651 (N.D. Tex. Mar. 31, 2009) (unpub.)….……………………….2, 3, 9

*United States ex rel. Bennett v. Biotronik, Inc.,*
    876 F.3d 1011 (9th Cir. 2017)………………………………………………………4

*United States ex rel. Davis v. Prince,*
   766 F.Supp.2d 679 (E.D.Va.2011)……………………………………………..…8

*United States ex rel. Feldman v. City of New York,*
   808 F. Supp. 2d 641 (S.D.N.Y. 2011)……………………………………………2

*United States ex rel. Green v. Northrop Corp.,*
   59 F.3d 953 (9th Cir. 1995)…………………………………………...…………....10

*United States ex rel. Janssen v. Northrop Grumman Corp.,*
   187 F.3d 649 (table), 1999 WL 451133 (9th Cir. 1999) (unpub.)……………..………2

*United States ex rel. Keaveney v. SRA Int'l, Inc.,*
   219 F. Supp. 3d 129 (D.D.C. 2016)……………………………………………..…7

*United States ex rel. Kelly v. Boeing Co.,*
   9 F.3d 743 (9th Cir. 1993)………………………………………………………16

*United States ex rel. Ketroser v. Mayo Found.,*
   729 F.3d 825 (8th Cir. 2013)...…………………………………………………..…2

*United States ex rel. Kreindler & Kreindler v. United Tech Corp.,*
   985 F.2d 1148 (2d Cir. 1993)………………………………………………………16

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,*
   149 F.3d 227 (3d Cir. 1998)…………………………………………………………4

*United States ex rel. Marcus v. Hess,*
   317 U.S. 537 (1943)……………………………………………………..………..14

*United States ex rel. McCurdy v. Gen. Dynamics Nat. Steel & Shipbuilding,*
   No. 07cv982-BTM, 2010 WL 1608411 (S.D. Cal. Apr. 20, 2010) (unpub.)..……….…...7

*United States ex rel. Nichols v. Omni H.C., Inc.,*
   No. 02-66, 2008 WL 906426 (M.D. Ga. Mar. 31, 2008) (unpub.)……...……………...…3

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.,*
   918 F. Supp. 1338 (E.D. Mo. 1996)………………………..………………………2

*United States ex rel. Polukoff v. St Mark's Hospital,*
   895 F.3d 730 (10th Cir. 2018)……………………………………….……12, 16

*United States ex rel. Ritchie v. Lockheed Martin Corp.,*
   558 F.3d 1161 (10th Cir. 2009)……………………………………….....……13

*United States ex rel. Roby v. Boeing Co.*,
   995 F. Supp. 790 (S.D. Ohio 1998)……………………………………………………...9, 10

*United States ex rel. Rogers v. Azmat*,
   No. 507-092, 2011 WL 10935173 (S.D. Ga. May 17, 2011) (unpub.)..……………10, 11

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
   472 F.3d 702 (10th Cir. 2006)………………………………………………………….5

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
   282 F.3d 787 (10th Cir. 2002)…………………………………………….........2, 11-18

*United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*,
   41 F.3d 1032 (6th Cir. 1994)………………………………………………...…14, 16

*United States ex rel. Wickliffe v. EMC Corp.*,
   473 F. App'x 849 (10th Cir. 2012) (unpub.)..……………………………………....17

*United States ex rel. Wilkins v. North Am. Constr. Corp*,
   173 F. Supp. 2d 601 (S.D. Tex. 2001),
   *overruled on other grounds*, 575 F.3d 458 (5th Cir. 2009)……………………………...10

*United States ex rel. Wisz v. C/HCA Development, Inc.*,
   31 F. Supp.2d 1068 (N.D. Ill. 1998)……………………………………………………8

*United States v. Everglades Coll., Inc.*,
   855 F.3d 1279 (11th Cir. 2017)……………………………………………………17

*United States v. Public Warehousing Co. K.S.C.*,
   242 F. Supp. 3d 1351 (N.D. Ga. 2017)………………………………………………...2

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
   529 U.S. 765 (2000)…………………………………………………………...……13, 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)……………………………………………………………...……15

**Federal Statutes and Constitution**

U.S. Const. art. II, § 3………………………………………………........................11-18

31 U.S.C. § 3730 *et seq*…………………………………………………………….…*passim*

**Congressional Reports**

Senate Report No. 345, 99th Cong. 2d Sess. (1986)………………………………………………..10


**Briefs**

*United States ex rel. Polukoff v. St Mark's Hospital*,
      Brief for the United States of America as Intervenor Pursuant to 28 U.S.C .§ 2403
      2018 WL 780484 (10th Cir. Jan. 30, 2018)………………………………….………..12

## QUESTIONS PRESENTED

1.  Whether a relator may file his or her own amended complaint after the Government has elected to intervene and proceed with the action.

2.  Whether Relators' second, third, and fourth amended complaint have any legal effect.

3.  Assuming that Relators' fourth amended complaint has legal effect, whether the court could dismiss that complaint if the defendants show that Relators' "unrestricted participation" in the action causes the defendants "undue burden or unnecessary expenses."

4.  Whether the False Claims Act violates the "take Care" clause of Article II of the U.S. Constitution to the extent that it allows private citizens to prosecute actions on behalf of the Government, after the Government has declined to intervene.

5.  What oversight, if any, has the Government exercised over the manner in which Relators' have prosecuted their "separate" claims?

I.    **INTRODUCTION**

The United States appreciates the opportunity to submit briefing on the questions

identified in the Court's August 2, 2018 Order, ECF No. 461 (Order) regarding the conduct of

litigation under the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3730.

II.   **ARGUMENT**

    A.    **It is permissible under the FCA for the Government to intervene in part with respect to certain causes of action in a relator's *qui tam* complaint but not others, and for the relator to litigate the declined causes of action as a full participant in the case.**

    In the view of the United States, it is entirely permissible under the FCA for the

Government to intervene in part with respect to certain causes of action in a relator's *qui tam*

complaint but not others, and equally permissible for the relator to litigate those causes of action

on which the United States did not intervene, as a full participant in the case.  As discussed in

more detail below, safeguards exist in the FCA and the Federal Rules of Civil Procedure to

prevent a relator from subverting the Government's controls over FCA litigation by adding new

claims or defendants in an improper manner, such that general dismissal of the declined claims

and defendants is not required.

The most pertinent provision of the FCA confirms Congress' intent that the Government

may intervene partially on a cause-of-action by cause-of-action basis.  Specifically, the statute

permits the Government to file its own complaint if it "elects to intervene and proceed with *an*

*action*," and it expressly states that the Government may "clarify or add detail to *the claims* in

which the Government is intervening."  31 U.S.C. § 3731(c) (emphasis added).

Since the extensive 1986 amendments to the *qui tam* provisions of the FCA, the universal

practice of the Government and the courts has been to construe references to "the action" as

referring to individual "causes of action" and to proceed in the manner described.  As an illustration, the Tenth Circuit has ruled upon appeals in cases where the United States partially intervened and the relator continued to litigate declined claims, without questioning the right of the relator to do so.  *See, e.g.*, *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 795 (10th Cir. 2002) ("the United States moved to intervene with respect to some, but not all of Stone's FCA allegations, and . . . the trial court granted the motion to intervene").  Other courts of appeals have similarly issued substantive rulings in such partially-intervened cases.  *See, e.g.*, *United States ex rel. Ketroser v. Mayo Found.*, 729 F.3d 825 (8th Cir. 2013); *United States ex rel. Janssen v. Northrop Grumman Corp.*, 187 F.3d 649 (table), 1999 WL 451133 (9th Cir. 1999) (unpub.) (upholding dismissal for lack of prosecution where a relator failed to proceed with the litigation of declined claims).

More specifically, as this Court's own Order indicated, all of the courts that have explicitly ruled upon a challenge to a relator's participation following partial intervention by the United States have upheld the relator's right to continue to litigate declined claims as a full participant in the case.  Order at 11 n.1, citing *Federal Recovery Servs. Inc. v. United States*, 72 F.3d 447, 450 n.1 (5th Cir. 1995); *United States v. Public Warehousing Co. K.S.C.*, 242 F. Supp. 3d 1351, 1357 (N.D. Ga. 2017); *United States ex rel. Becker v. Tools & Metals, Inc.*, Nos. 3:05-CV-0627-L, 3:05-CV-2301-L, 2009 WL 855651, at *9 (N.D. Tex. Mar. 31, 2009) (unpub.); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1347 (E.D. Mo. 1996); *Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348, 353 (D.D.C. 1990).  Other courts have reached the same result.  *United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 648 (S.D.N.Y. 2011) ("if the Government only partially intervenes in an action, a

- 2 -

relator may retain standing to prosecute those aspects of his or her complaint as to which the

Government has not intervened"); *United States ex rel. Nichols v. Omni H.C., Inc.*, No. 02-66,

2008 WL 906426, at *4 (M.D. Ga. Mar. 31, 2008) (unpub.) ("the relator may pursue those

claims as to which the Government has declined to intervene").

      One district court discussed these issues extensively and upheld the right of the United

States to intervene on a claim-by-claim basis and the right of the relator to litigate those claims

that were declined:

> The government specifically declined to intervene in "relator Becker's conspiracy
> allegations under section 3729(a)(3)." … 1. The court reads the government's notice
> as declining to intervene in what is now Relators' first claim, violation of 31 U.S.C.
> § 3729(a)(3) against all Defendants. This claim falls squarely within the provision
> of the FCA that provides that the government shall "notify the court that it declines
> to take over the action, in which case the person bringing the action shall have the
> right to conduct the action." ... Accordingly, this court joins other courts that have
> held that relators are entitled to proceed on their claims when the government only
> partially intervenes….

*Becker*, 2009 WL 855651, at *9 (citations omitted).  The *Becker* court also made clear that its

ruling excluded the possibility of duplicative litigation, by dismissing those claims of the relators

that overlapped with the claims as to which the Government intervened.  *Id.* at *6.  However,

even as to those claims, the court held that "Relators remain parties to the claim and are entitled

to participate in the claim pursuant to the statute."  *Id.* at *5-6.

      Other limitations upon a relator's participation in *qui tam* litigation also have been

construed by courts on a cause-of-action by cause-of-action basis.  The "first-to-file bar" in the

FCA provides that "[w]hen a person brings an action under this subsection, no person other than

the Government may intervene or bring a related action based on the facts underlying the

pending action."  § 3730(b)(5).  It prevents a second-in-time relator from filing a *qui tam* suit

that is parasitic upon an earlier relator's suit.  While the statute uses the term "action," courts uniformly examine the bar's applicability to the second relator on a cause-of-action by cause-of-action basis.  In other words, the inquiry is not whether the second relator's entire complaint is subject to the first-to-file bar, but rather whether any of the individual causes of action in that complaint are thus defective.[1]  As an example, in *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc*., the Third Circuit stated that "[g]iving each word its ordinary meaning, the phrase 'related action based on the facts underlying the pending action,' clearly bars *claims* arising from events that are already the subject of existing suits."  149 F.3d 227, 232 (3d Cir. 1998) (emphasis added).  That court went on to analyze the applicability of the bar to each count of the relator's complaint individually.  *Id*. at 235-37.  *Cf. Jones v. Bock*, 549 U.S. 199, 221, 224 (2007) (adhering to the "typical claim-by-claim approach" in assessing exhaustion requirements for litigation brought by prisoners, even though the governing statute provided that "'[n]o *action* shall be brought' unless administrative procedures are exhausted").

In practical terms, construing "action" in the FCA to mean "cause of action" with respect to the Government's intervention decision is supported by decisions of other courts, is

---

[1]     The "public disclosure" bar of the FCA is construed in the same fashion, although that provision is explicit in barring an "action or claim" under circumstances where "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in certain fora.  § 3730(e)(4)(A).

Finally, the "government action" bar prevents a relator from bringing a suit "which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  § 3730(e)(3).  It should be noted that the Ninth Circuit recently stated that "the Government becomes a 'party' to the suit as a whole when it intervenes," for purposes of that section.  *United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1021 (9th Cir. 2017).  That language does not indicate that a relator ceases to be a party, however, or that a relator cannot continue to litigate declined claims.

appropriate here, and relieves the concerns raised by the Court.  *See* Order at 5-9.  The Government chooses which causes of action and defendants are in and out of its complaint, for which it has primary responsibility.  The relators can proceed with the declined causes of action in parallel. [2]   Issues of settlement and any awards to relators of a share or of attorney's fees can be apportioned appropriately between causes of action.  The Court is correct that the statute of limitations, as construed by the Tenth Circuit, would indeed pose different issues as to the Government's claims and those of the relators.  *See, e.g.*, *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 725 (10th Cir. 2006) (the ten-year statute of repose at § 3731(b)(2) "was not intended to apply to private qui tam relators").  However, this is an issue in any FCA case in this Circuit, as *Sikkenga* means that the limitations period may differ simply depending upon whether or not the United States intervenes.  *Id.*

Indeed, to construe "action" solely to refer to a case as a whole could itself raise a host of substantive and procedural problems, leading to results at odds with the Court's concerns.  If partial intervention were unavailable and the FCA permitted intervention only in "an action" as a whole or not at all, then in a case where some of a relator's claims appear to be appropriate for intervention and others do not, or where intervention appears appropriate as to some defendants but not others, the United States would be forced to choose between intervening in the case as a whole, even including those claims and defendants that it did not wish to pursue, or declining the entire matter and abandoning potentially meritorious causes of action.  In other words, the United

---

[2]     The issue of potential unfairness to a defendant whom a relator may improperly add to the case can be addressed by other means, as set forth in Section B below, without having to bar a relator from litigation of declined claims entirely.

States would be forced either to pursue claims that it does not wish to pursue or to forgo claims that it may wish to see proceed—a Hobson's choice that Congress could not have intended.[3]

This Court correctly stated that "the Government—not the relator—must necessarily determine which claims are in and which are out and who is named as a defendant."  Order at 5. However, to construe "action" in § 3730 to refer only to a *qui tam* suit as a whole would have the perverse result of sharply increasing relators' control over the Government's enforcement efforts under the FCA, purely by the manner in which relators draft their *qui tam* complaints.  Presented with a relator's complaint, the Government would be obliged either to intervene as to all of the defendants and causes of action that the relator chose to include or none of them.  In the view of the United States, Congress cannot possibly have intended for the FCA to constrain the Government's civil fraud enforcement in this manner.

Finally, if this Court were to rule that the FCA does not permit the relators to proceed, the Government respectfully submits that it should be afforded an opportunity to submit a revised Notice of Intervention.  Its decision to intervene as to some defendants and causes of action but not others was made against the backdrop of a legal framework that the relators would be permitted to litigate any non-intervened claims.  If those claims instead must be dismissed, it is appropriate to offer the United States an additional opportunity to consider intervention therein. In the alternative, if this Court finds that partial intervention is impermissible, and that the Government's notice of intervention as to the relators' First Amended Complaint constituted an

---

[3]     Moreover, like the provision that governs intervention, the subsection that addresses dismissal over a relator's objection also states that "the Government may dismiss *the action*." § 3730(c)(2)(A) (emphasis added).  If one were to conclude that the FCA has no provision for partial intervention, then it is potentially difficult to see how the United States would carry out partial dismissal either, of claims or defendants that it did not wish to pursue.

intervention on all claims in the case as a whole, then the United States should be afforded an opportunity to amend its Complaint in Intervention to reflect that finding.

     **B.**     <u>**All of Relators' Amended Complaints have been properly filed and have full legal effect.**</u>

The United States believes that all of the Relators' amended complaints have been properly filed and served, with full legal effect. The Relators' First Amended Complaint, in which they added new defendants, was filed under seal at a time when the case was still under investigation. ECF No. 11. The Relators' Second Amended Complaint, in which they again added new defendants, was filed after the Government's original Notice of Partial Intervention, but it was filed with the added portions under seal with leave of court, in order to provide the Government with an additional opportunity to investigate and consider intervention against those new defendants, as is done when an original *qui tam* complaint is filed. ECF No. 74 (Order granting leave to file Second Amended Complaint partially under seal). The United States filed a notice declining to intervene as to the new defendants in the second amended complaint. ECF No. 84. The later amendments to the relators' complaint only added additional detail to the fraudulent schemes already described, and thus did not have to be filed under seal. *United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129, 140 (D.D.C. 2016) ("Relators' Amended Complaint 'expand[s] upon or clarif[ies] facts previously alleged'"); *United States ex rel. McCurdy v. Gen. Dynamics Nat. Steel & Shipbuilding*, No. 07cv982-BTM, 2010 WL 1608411, at *1 (S.D. Cal. Apr. 20, 2010) (unpub.) ("the First Amended Complaint appears to state the same claims for relief, but with more detail. Thus, the policy considerations underlying the FCA's requirement that plaintiffs first file the action under seal may not apply").

This Court's concern about a runaway relator adding defendants or causes of action haphazardly is thus alleviated by the filing requirements of § 3730(b)(2) of the FCA.[4]  If a relator were to add new defendants or new causes of action without affording the United States an opportunity to investigate and consider intervention, that amended pleading might be subject to dismissal for failure to follow those requirements, which require that a complaint be filed *in camera*, remain under seal for at least 60 days, not be served on the defendant until the court so orders.[5]  31 U.S.C. § 3730(b)(2); *see, e.g.*, *United States ex rel. Davis v. Prince,* 766 F. Supp. 2d 679, 684 (E.D. Va. 2011) ("the term 'complaint' in § 3730(b)(2) encompasses original complaints and amended complaints, where the latter add new claims for relief or new and substantially different allegations of fraud"); *United States ex rel. Bain v. Georgia Gulf Corp.*, No. 01-562-B-3, 2005 U.S. Dist. LEXIS 48559 (June 22, 2005, M.D. La.).  There have been no procedural irregularities in connection with any of the Relators' amended complaints in this case, however, and the relators' substantive right to proceed with the litigation of declined claims has been uniformly recognized by other courts, as described in Section A above.

C.      **The purpose of § 3730(C)(2)(D) is to deter duplicative or wasteful litigation tactics on causes of action where the United States has intervened and not a basis for shielding a defendant from having to litigate against relators.**

In the Government's view, § 3730(c)(2)(D) exists to deter duplicative or wasteful litigation tactics on causes of action where the United States has intervened and assumed primary

---

[4]      Likewise, a court also maintains its inherent authority to limit the number of amended complaints that are filed by relators in an FCA case, just as it would in any case.

[5]      Some courts have held that even an amended complaint that adds a defendant need not necessarily be filed under seal.  In one such case, however, the added defendant was a new corporate parent, so the nature of the allegations against the new defendant were not different. *United States ex rel. Wisz v. C/HCA Development, Inc.*, 31 F. Supp. 2d 1068 (N.D. Ill. 1998)

responsibility.  It is not a basis for entirely shielding a defendant from having to litigate against relators over declined claims.  Such a broad construction would unduly strain the statutory text, as Congress would not have buried such a sweeping dismissal power into oblique and narrow language referring to expense.   Counsel for the United States has found no court that has ever adopted this expansive view of § 3730(c)(2)(D).

The *Becker* court appears to share the Government's understanding of this provision. When it described the existence of mechanisms within § 3730(c)(2) of the FCA for limiting the participation of a relator, it did so in its discussion of the relator's continuing role in connection with the *intervened* claims in that case, and not in its discussion of the declined claims on which the relator was litigating.  *Becker*, 2009 WL 855651, at *5-6.

In *United States ex rel. Roby v. Boeing Co.*, 995 F. Supp. 790 (S.D. Ohio 1998), the defendant sought to limit the relator's participation following partial intervention pursuant to § 3730(c)(2)(D), but the court denied the motion, finding that "Boeing's evidence does not sufficiently show Relator is engaged in any inappropriate tactics to cause delay, burden, or harass Boeing."  *Id.* at 795.  The relator was permitted to continue to litigate his causes of action "in the manner that he is proceeding," *id.*, which specifically included service of discovery requests upon the defendant.[6]  *Id.* at 791-92.  The *Roby* court also cited to Ninth Circuit authority that emphasized Congress' view of the potential importance of a relator's participation:

> [p]roviding the relator a right to recover, a role in the action when the government intervenes ..., and a right to object to dismissal or settlement by the government ..., also serve[s] the additional purpose of giving the relator the incentive to 'act [ ] as

---

[6]     The *Roby* court noted that the relator "does not appear to be pursuing a separate theory, rather determining whether separate facts exists" [sic], but it did not hold that this factor was necessary to its denial of the defendant's motion.  *Roby*, 995 F. Supp. at 795.

a check that the government does not neglect evidence, cause undu[e] delay, or drop the false claim case without legitimate reasons.'")

*Roby*, 995 F. Supp. at 795 n.8, *citing United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 964 n. 8 (9th Cir. 1995) (citing Senate Report No. 345, 99th Cong. 2d Sess. 25–26 (1986), reprinted in 1986 U.S.C.C.A.N. at 5290–91) (emphasis omitted).

In *United States ex rel. Wilkins v. North Am. Constr. Corp.*, the Government partially intervened and the relator proceeded with the declined causes of action.  173 F. Supp. 2d 601, 607 (S.D. Tex. 2001), *overruled on other grounds*, 575 F.3d 458, 469 (5th Cir. 2009).  The defendant sought to dismiss the relator entirely, arguing that the relator's complaint had been superseded by the Government's intervention.  *Id.* at 644.  Although the defendant did not invoke § 3730(c)(2)(D), the court denied the motion pursuant to those terms, holding that, absent a showing that the relator's "participation in the litigation is for purposes of harassment, or that it would cause defendants an undue burden or unnecessary expense[,] ... the statute clearly contemplates unrestricted participation and full party status for the relator."  *Id.*

*United States ex rel. Rogers v. Azmat* is another case in which the United States partially intervened and the relator proceeded with declined causes of action.  No. 507-092, 2011 WL 10935173 (S.D. Ga., May 17, 2011) (unpub.).  In a motion pursuant to § 3730(c)(2)(D), the defendant did not seek to invoke the provision to prevent the relator from litigating the declined causes of action, but only to restrict the relator from access to certain information produced in discovery.  The court found that the statutory criteria for limiting participation (harassment, undue burden, unnecessary expense) had not been shown and so it denied the motion.[7]  *Id.* at *4.

---

[7]     The *Azmat* court did prohibit the relator from using the information in related state-court litigation pending the resolution of certain issues in the state case.

In the instant case, the relators' continued litigation of the declined causes of action amounts to parallel—and not duplicative—litigation.  The defendants face no greater burden than they would if the Government had declined entirely and allowed the relators to proceed forward with all of their claims.  Indeed, if this Court were to dismiss the Relators' Complaint on the basis of the Government' partial intervention, that would put a defendant automatically in a *better* litigation position where the Government has partially intervened as opposed to where it has entirely declined, because that defendant would face fewer claims against it.  Respectfully, it is difficult to see this as the intent of Congress.

Finally, nothing in the FCA restricts a court from applying the ordinary tools available under the Federal Rules of Civil Procedure to dispose of claims lacking legal or factual support on an individual basis, or from establishing an orderly discovery process as in any multi-party litigation.  This Court's authority and discretion in such matters remains unaffected.

**D.      The Tenth Circuit's decision in _Stone_ governs here and concludes that the False Claims Act does not violate the Take Care Clause of Article II.**

Courts of Appeals have unanimously agreed that the *qui tam* provisions of the FCA are consistent with the constitutional separation of powers, and, specifically, the Take Care Clause, which establishes that the Executive is the branch of Government which "shall take Care that the laws be faithfully executed."  U.S. Const., art. II, § 3.  Most importantly, in a decision that governs here, the Tenth Circuit rejected a Take Care Clause challenge to the *qui tam* provisions of the False Claims Act.  *Stone*, 282 F.3d 787.  Although the Tenth Circuit limited its analysis to "the circumstances of th[at] case," where "[t]he Government sought, and was granted permission, to intervene," *id.* at 806, the circumstances of that case and this one are analogous: there, as here, the United States "moved to intervene with respect to some, but not all of [the

- 11 -

relator's] FCA allegations," *id.* at 795; *see also id.* at 796 (noting that a subsequently amended complaint included a claim asserted only by the relator). Tenth Circuit precedent accordingly compels a conclusion that the *qui tam* provisions are consistent with the Take Care Clause as applied to this case.

As the Court is aware, the broader question of the constitutionality of the *qui tam* provisions where the United States does *not* intervene was recently briefed for the Tenth Circuit in *United States ex rel. Polukoff v. St Mark's Hospital*, 895 F.3d 730 (10th Cir. 2018). While the Tenth Circuit did not reach this question, the United States addressed it in its Brief as Intervenor, submitted January 30, 2018. *See* 2018 WL 780484, Brief of United States as Intervenor Pursuant to 28 U.S.C. § 2403. While, the Tenth Circuit's decision in *Stone* governs this case, where the United States has partially intervened, the Government nonetheless lays out below its more general position regarding the constitutionality of the *qui tam* provisions under the Take Care Clause.

In assessing whether legislation "disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977). Regardless of whether the United States intervenes in a given suit, relators' conduct of *qui tam* litigation does not prevent the President from carrying out his constitutional functions—a point on which courts have long agreed.

*Qui tam* relators are private litigants. The Supreme Court made this clear in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), where it expressly declined to adopt a theory that a private relator sues as an "agent of the United States."

- 12 -

529 U.S. 765, 772 (2000).  The Court instead held that, although it is the United States whose

injury underlies an FCA suit, the relator has Article III standing because of his independent

stake:  he has a "concrete *private* interest in the outcome of the suit" that arises from Congress's

"partial assignment of the Government's damages claim" to him.  *Id.* at 772-73 (emphasis

added).  That a relator brings a *qui tam* action "in the name of the Government," 31 U.S.C.

§ 3730(b)(1), is a procedural practice that does not alter this conclusion, and the merits analysis

in *Stevens* further underscores the point.  After addressing standing, the Supreme Court held that

the FCA does not authorize relators to pursue *qui tam* actions against states because, among

other things, actions pursued by relators are "private suit[s]" brought by "private parties."

*Stevens*, 529 U.S. at 780-81 n.9, 786 n.17; *see also United States ex rel. Ritchie v. Lockheed

Martin Corp.*, 558 F.3d 1161, 1167 (10th Cir. 2009) (holding that a would-be relator had validly

released potential future *qui tam* claims because "the relator has an interest in some part of the

civil action apart from the Government").

       That a relator's suit may also vindicate a federal interest in remedying and deterring fraud

on the United States does not change the analysis.  As the en banc Fifth Circuit explained when it

rejected a separation-of-powers challenge to the *qui tam* provisions, the Take Care Clause "does

not require Congress to prescribe litigation by the Executive as the *exclusive* means of enforcing

federal law." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001).  Instead, as

the Sixth Circuit noted, "[o]ur current statutory framework includes many laws that authorize

individuals to act as 'private attorneys-general,' bringing causes of action for the common weal,"

*United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir.

1994), such as Title VII and the Sherman Act.

Courts have also correctly recognized that historical evidence helps establish the validity of the *qui tam* provisions.  "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government."  *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943).  In *Stevens*, the Supreme Court reviewed this "long tradition of *qui tam* actions in England and the American Colonies," as well as the "considerable number" of such statutes that the First Congress itself enacted, and found the evidence "well nigh conclusive with respect to the question . . . whether *qui tam* actions were cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process."  529 U.S. at 774, 776-77 (quotation marks omitted).

The historical evidence is also highly relevant to the constitutional question presented here.  *See, e.g., Riley*, 252 F.3d at 752-53.  That the First Congress enacted numerous *qui tam* provisions makes clear that the Framers did not believe relators were performing functions that only federal officers could properly perform.  *See Bowsher v. Synar*, 478 U.S. 714, 723-24 (1986) (explaining that acts of the First Congress "provide[] contemporaneous and weighty evidence of  the Constitution's meaning since many of the Members of the First Congress had taken part in framing that instrument") (quotation marks omitted).  And the long tradition of *qui tam* actions in the United States after the Framing provides "additional evidence that the doctrine of separated powers does not prohibit" this unique practice, given that "'traditional ways of conducting Government . . . give meaning' to the Constitution."  *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610

(1952) (Frankfurter, J., concurring)); *see also NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559-60 (2014).

As noted above, the Tenth Circuit's decision in *Stone* governs here.  In that case, the Court of Appeals concluded that, "at least where the Government is permitted to intervene and does so, the *qui tam* provisions of the FCA do not violate the Take Care Clause provisions of Article II and their separation of powers principles."  *Stone*, 282 F.3d at 806.  The Tenth "express[ed] no opinion regarding" the validity of the *qui tam* provisions "in circumstances other than presented in th[at] case, *i.e.*, if the Government had sought permission to intervene, but was denied intervention by the district court, or if the Government desired to remove the relator form the action but was prevented from doing so by application of the statute."  *Stone*, 282 F.3d at 806 n.6.  But there, as here, the United States had only *partially* intervened—a point which the Tenth Circuit mentions in passing but did not analyze in detail.  *Id.* at 795.  *Stone* is accordingly controlling here.

To be clear, *Stone* presented an instance where the Government initially chose *not* to intervene, the relator proceeded with the case, and ultimately the Government later intervened for cause in *some but not all* of relator's claims.  *See* 282 F.3d at 795-96.  The Tenth Circuit "was unconvinced by [defendant's] contention that the presence of a *qui tam* relator in the litigation so hindered the Government's prosecutorial discretion as to deprive the Government of its ability to perform its constitutionally assigned responsibilities."  *Id.* at 806 (citing *Morrison v. Olson*, 487 U.S. 654, 695-96 (1988)).  The conclusion is not different here, where the Government partially intervened in a *qui tam*, and has been litigating the case side-by-side with

- 15 -

relators for several years.  As *Stone* explained, the Government maintains significant control over *qui tam* litigation in which it intervenes, as it has here.  *See id.* at 805-06.

The Tenth Circuit found it unnecessary to address the constitutional issue in *Polukoff*, and this Court likewise need not address how the Take Care Clause applies where the United States does not intervene in a *qui tam* suit.  But numerous courts of appeals have correctly recognized, under the current version of the FCA, the United States likewise retains significant control over *qui tam* suits in which it does not intervene.  *See Riley*, 252 F.3d at 753-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753-55 (9th Cir. 1993); *United States ex rel. Kreindler & Kreindler v. United Tech Corp.*, 985 F.2d 1148, 1155 (2d Cir. 1993).  Regardless of whether it intervenes, for example, the United States is entitled to receive copies of all pleadings and transcripts, 31 U.S.C. § 3730(c)(3); to stay any discovery by the relator that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," *id.* § 3730(c)(4); and to pursue "any alternate remedy available to the Government" against the defendant, *id.* § 3730(c)(5).  The Government may intervene in a *qui tam* suit at any time "upon a showing of good cause."  *Id.* § 3730(c)(3).  After doing so, the Government has "the primary responsibility for prosecuting the action, and shall not be bound by an act of" the relator.  *Id.* § 3730(c)(1).

Even if it never intervenes, the United States can dismiss a *qui tam* suit over the relator's objection.  *See* 31 U.S.C. § 3730(c)(2)(A); *see also Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 932 (10th Cir. 2006) (holding that the Government need not intervene before dismissing a relator's case).  The Government can, for example, dismiss even a meritorious *qui tam* suit simply because the Government has separately resolved the claims at issue and wishes to prevent

duplicative litigation, *see United States ex rel. Wickliffe v. EMC Corp.*, 473 F. App'x 849, 853-54 (10th Cir. 2012) (unpub.), or because the suit might divert Government resources from other projects or risk disclosure of sensitive information, *see Ridenour*, 397 F.3d at 936-37.  The Government can also settle a pending *qui tam* suit without formally intervening.  *See* 31 U.S.C. § 3730(c)(2)(B); *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1285-86 & n.3 (11th Cir. 2017); *see also id.* at 1288 (affording "considerable deference to the settlement rationale offered by the government").  The Government can veto a relator's proposed settlement or voluntary dismissal of his action.  *See* 31 U.S.C. § 3730(b)(1); *Ridenour*, 397 F.3d at 931 n.8.  And because the first-to-file bar and the public disclosure bar do not apply to the Government, the Government can bring its own action even after a relator's suit is dismissed, subject to principles of claim preclusion.  *See* 31 U.S.C. § 3730(b)(5), (e)(4).

All of these control mechanisms have been fully available here.  Like *Stone*, this is a case in which the Government intervened in part.  282 F.3d at 795.  "Consequently, the Government [has been] a full and active participant in the litigation as it jointly prosecute[s] the case with [Relators]."  *Id.* at 806.  Also like *Stone*, this is not a case in which "the Government . . . sought permission to intervene, but was denied intervention by the district court, or . . . the Government desired to remove the relator from the action but was prevented from doing so by application of the statute."  *Id.* at 806 n.6.  Nor did the Government seek to dismiss the action or otherwise oppose Relators' prosecution of the claim.  Here, as explained below, the Government intervened in the litigation, has actively participated in this case throughout its life, and has been litigating alongside Relators over the past several years.  The Government's prosecutorial discretion has

- 17 -

not been disturbed, and (as explained in Section E below), the Government has exercised

oversight over Relators throughout the case.

      E.      **The Government has exercised oversight over Relators' prosecution of the non-intervened claims.**

     As explained in detail above, the False Claims Act contains numerous mechanisms by

which the Government may exercise oversight over a relator's prosecution of a *qui tam* action

even where the Government has not intervened.  For instance, the United States can dismiss a *qui*

*tam* suit over the relator's objection, settle a pending *qui tam* suit even without formally

intervening, and veto a relator's proposed settlement or voluntary dismissal of his action.

Further, whether or not it intervenes, the United States is entitled to receive copies of all

pleadings and transcripts, to stay any discovery by the relator that "would interfere with the

Government's investigation or prosecution of a criminal or civil matter arising out of the same

facts," 31 U.S.C. § 3730(c)(4), and to pursue "any alternate remedy available to the

Government" against the defendant, *id.* § 3730(c)(5).  Finally, the Government may intervene in

a *qui tam* suit at any time "upon a showing of good cause." *Id.* § 3730(c)(3).

     These control mechanisms in the *qui tam* statute are sufficient to ensure constitutionality,

but additional oversight beyond these controls is not necessary.  This is especially true here,

where the United States partially intervened and has, accordingly, been litigating the intervened

claims and closely monitoring Relators' prosecution of the non-intervened claims.  As in *Stone*,

the Government has been "a full and active participant in the litigation as it jointly prosecute[s]

the case with [Relators]."  282 F.3d at 806.  The Government has exercised significant oversight

over Relators' prosecution of the non-intervened claims, in particular, in at least three distinct

ways.

- 18 -

*First*, as was explained by Relators in the "Explanation of Timing" section of their Motion for Partial Reconsideration, Relators wished to file a motion for reconsideration earlier, but "[t]he Government disagreed and in early January 2017 asserted its authority to restrict Relators' counsel from taking actions in the case that the Government believed were inappropriate.  The Government instructed Relators' counsel not to file the cross-motion." Relators' Motion for Partial Reconsideration, ECF 364 at 1.  The Government did not dispute Relators' recitation of those circumstances in the Government's own Motion for Partial Reconsideration as it was not relevant to the Government's Motion.  Indeed, Relators' counsel consulted with the Government as to the possibility of seeking reconsideration, and the Government provided guidance and direction regarding this issue.  This is plainly an exercise of oversight over the prosecution of the non-intervened claims.

*Second*, there have been at approximately 16 occasions where the Government and Relators (and in some cases Defendants) have filed joint statements with the Court.  Such joint positions are the product of consultation prior to filing, and necessarily require the Government's involvement. The Government has specifically and directly participated in these aspects of Relators' prosecution of the non-intervened claims.

*Third*, the Government and Relators have worked as parallel litigants throughout the life of this case.  There have been countless phone calls, emails, and meetings discussing the various and sundry issues that have arisen in this case and the United States has provided consultation to Relators on general strategic matters, including with respect to the non-intervened claims.

Thus, the Government has exercised oversight and provided consultation and guidance to Relators regarding the prosecution of the non-intervened claims.

III.    **CONCLUSION**

The United States hereby submits the above response to the questions presented by the

Court in its August 2, 2018 Order.

DATED this 16th day of August, 2018.

CHAD A. READLER
Acting Assistant Attorney General

JOHN W. HUBER
United States Attorney

/s/ Sandra L. Steinvoort
SANDRA L. STEINVOORT
Assistant United States Attorney (#5352)
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Sandra.Steinvoort@usdoj.gov

MICHAEL D. GRANSTON, Director
ALLISON CENDALI, Assistant Director
JAY D. MAJORS, Trial Attorney
JOHN W. BLACK, Trial Attorney
U.S. Department of Justice, Civil Division
175 N Street NE
Washington, DC 20002
Telephone: (202) 307-0264
Jay.Majors@usdoj.gov

Attorneys for the United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August 2018, a true and correct copy of the foregoing United States' Brief in Response to Order (ECF 461) was served via the court's CM/ECF electronic filing system to all counsel of record.


<u>/s/  Sandra L. Steinvoort</u>