Alan L. Sullivan (3152)
Paul W. Shakespear (14113)
SNELL & WILMER (UT)
15 W. South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Email: asullivan@swlaw.com
      pshakespear@swlaw.com

Steven M. Gombos (*pro hac vice*)
Gerald M. Ritzert (*pro hac vice*)
GOMBOS LEYTON, P.C.
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: (703) 934-2660
Email: sgombos@glpclaw.com
      gritzert@glpclaw.com

Attorneys for Defendants Stevens-Henager College, Inc.; California College San Diego, Inc.; CollegeAmerica Denver, Inc.; CollegeAmerica Arizona, Inc.; Center for Excellence in Higher Education, Inc.; and Carl Barney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. KATIE BROOKS AND NANNETTE WRIDE, <br><br> PLAINTIFFS, <br><br> vs. <br><br> STEVENS-HENAGER COLLEGE, INC., A Utah corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., A Utah corporation; COLLEGEAMERICA DENVER, INC., A Colorado corporation; COLLEGEAMERICA ARIZONA, INC., A Colorado corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, AN Indiana corporation; CARL BARNEY, AN individual; AND DOES 1-500, INCLUSIVE, ET AL., <br><br> DEFENDANTS. | **DEFENDANTS' RESPONSE TO THE COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING (ECF 461)** <br><br> CASE NO. 2:15-CV-00119-JNP-EHF <br><br> JUDGE JILL N. PARRISH <br><br> MAGISTRATE JUDGE EVELYN J. FURSE |

# Table of Contents

Introduction ......................................................................................... 1

Procedural Background ..................................................................... 1

Argument ......................................................................................... 6

1.     Nothing in the FCA suggests *qui tam* plaintiffs may file amended complaints adding new defendants and fraud allegations after the Government intervenes. .................... 6

2.     If the Court finds that Relators can file amended complaints adding parties and claims after the Government intervenes, it should strictly enforce § 3730(b) and dismiss claims that were not initially filed under seal. ................................................................. 9

3.     This Court has wide discretion to condition Relators' participation in this action under 31 U.S.C. § 3730(c)(2)(D)—including by dismissing Relators' FAC and limiting Relators to the claims in which the Government has intervened. ................. 11

      3.1     This Court has discretion to limit Relators' participation in any manner it deems necessary to prevent undue burden or unnecessary expense to Defendants. ........ 11

      3.2     The Court should limit Relators' participation to the fraud allegations pursued by the Government. ..................................................................................... 13

4.     Recent decisions questioning *qui tam* enforcement justify this Court's concerns about the constitutionality of *qui tam* enforcement. ............................................... 17

5.     The Government has demonstrated little oversight of Relators' prosecution of their separate claims. ................................................................................... 20

Conclusion ..................................................................................... 20

Certificate of Service ................................................................... 22

# Table of Authorities

## Cases

*Am. Civil Liberties Union v. Holder,*
673 F.3d 245 (4th Cir. 2011)...................................................................................... 9

*Forest County Potawatomi Cmty. v. United States,*
317 F.R.D. 6 (D.D.C. 2016) ......................................................................................12

*Herbert v. Nat'l Acad. of Scis.,*
No. 90-2568, 1992 U.S. Dist. LEXIS 14063, (D.D.C. Sept. 15, 1992) ............................................1

*In re Pharm. Indus. Average Wholesale Price Litig.,*
No. 07-10248, 2007 U.S. Dist. LEXIS 89835 (D. Mass Dec. 6, 2007) ......................................... 6

*Macomb Interceptor Drain Drainage Dist. v. Kilpartick,*
No. 11-13101, 2012 U.S. Dist. LEXIS 63725 (E.D. Mich. May 7, 2012) ........................................12

*Minter v. Prime Equip. Co.,*
451 F.3d 1196 (10th Cir. 2006) ......................................................................................13

*Morrison v. Olson,*
487 U.S. 654 (1988)...................................................................................... 17, 18

*Stringfellow v. Concerned Neighbors in Action,*
480 U.S. 370 (1987)......................................................................................12

*Trbovich v. UMW,*
404 U.S. 528 (1972) ......................................................................................12

*U.S. ex rel. Barajas v. Northrop Corp.,*
147 F.3d 905 (9th Cir. 1998)...................................................................................... 6, 8

*U.S. ex rel. Brooks v. Stevens-Henager College, Inc.,*
No. 1:13-cv-00009, 2014 U.S. Dist. LEXIS 92562 (D. Idaho July 7, 2014) ...................................13

*U.S. ex rel. D'Agostino v. ev3, Inc.,*
845 F.3d 1 (1st Cir. 2016) ......................................................................................19

*U.S. ex rel. Davis v. Prince,*
766 F. Supp. 2d 679 (E.D. Va. 2011) ......................................................................................9, 10

*U.S. ex rel. Einstein v. City of New York,*
556 U.S. 928 (2009) ...................................................................................................7

*U.S. ex rel. Estate of Cunningham v. Millennium Labs of Cal.,*
No. 09-12209, 2014 U.S. Dist. LEXIS 10312 (D. Mass. Jan. 28, 2014) ........................................10

*U.S. ex rel. Estate of Robert Gadbois v. PharMerica Corp.,*
292 F. Supp. 3d 570 (D.R.I. 2017) ...............................................................................6

*U.S. ex rel. Halegoua v. Freed, Kleinberg, Nussbaum, Fiesta & Kronberg M.D.,*
No. 14-cv-3943, 2016 U.S. Dist. LEXIS 103498 (E.D.N.Y. Aug. 5, 2016) ...................................10

*U.S. ex rel. Harman v. Trinity Industries, Inc.,*
872 F.3d 645 (5th Cir. 2017) .......................................................................................19

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
360 F.3d 220 (1st Cir. 2004) ........................................................................................9

*U.S. ex rel. Kester v. Novartis Pharms. Corp.,*
No. 11-cv-8196, 2015 U.S. Dist. LEXIS 2187 .................................................................15

*U.S. ex rel. Knight v. Reliant Hospice Inc.,*
No. 3:08-cv-3724, 2011 U.S. Dist. LEXIS 36813 (D.S.C. Apr. 4, 2011) ......................................11

*U.S. ex rel. Mallavaru v. Acadiana Cardiology, LLC,*
No. 04-732, 2010 U.S. Dist. LEXIS 104718 (W.D. La. Aug. 16, 2010) .......................................7

*U.S. ex rel. Mistick PBT v. Housing Auth.,*
186 F.3d 376 (3d Cir. 1999) ........................................................................................14

*U.S. ex rel. Raggio v. Jacintoport Int'l LLC,*
No. 10-10908, 2013 U.S. Dist. LEXIS 80091 (D.D.C. June 7, 2013) ...........................................11

*U.S. ex rel. Roby v. Boeing Co.,*
995 F. Supp. 790 (1998) .............................................................................................11

*U.S. ex rel. Ruckh v. Salus Rehabilitation, LLC,*
No. 8:11-cv-1303, 2018 U.S. Dist. LEXIS 5148 (M.D. Fla. Jan. 11, 2018) ...................................19

*U.S. ex rel. S. Prawer & Co. v. Fleet Bank,*
24 F.3d 320 (1st Cir. 1994) ..........................................................................................17

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,*
944 F.2d 1149 (3d Cir. 1991) .......................................................................................15

*U.S. ex rel. Stone v. Rockwell Int'l Corp.,*
265 F.3d 1157 (10th Cir. 2001) ........................................................................ 17, 18

*U.S. ex rel. Swensen v. McDonnell Douglas Helicopter Co.,*
No. 98-cv-1476, 2001 U.S. Dist. LEXIS 26658 (D. Ariz. July 25, 2001) ...................................... 6

*U.S. ex rel. Wilson v. Bristol Myers Squibb,*
2011 U.S. Dist. LEXIS 63714 (D. Mass. June 16, 2011) ................................................10

*United States v. Dekalb County,*
No. 06-cv-17195, 2011 U.S. Dist. LEXIS 154837 (N.D. Ga. Oct. 11, 2011)....................................12

*Universal Health Servs. v. U.S. ex rel. Escobar,*
136 S.Ct. 1989 (2016) ............................................................................... 4

*Vinson v. Washington Gas Light Co.,*
321 U.S. 489 (1944).................................................................................12

*Wildearth Guardians v. Salazar,*
272 F.R.D. 4 (D.D.C. 2010)............................................................................12

## Statutes

31 U.S.C. § 3730(b)(2) ............................................................................... 2

31 U.S.C. § 3730(b)(4)(A) ..........................................................................6, 7

31 U.S.C. § 3730(c)(2)(D) .........................................................................11, 12

31 U.S.C. § 3730(d)(4) ............................................................................... 8

## Other Authorities

132 Cong. Rec. H. 9382 (1986)........................................................................12

Constitutionality of the Qui Tam Provisions of the False Claims Act,
13 Op. Off. Legal Counsel 207, 230 (1989) ...............................................................18

John T. Boese, Civil False Claims and Qui Tam Actions
§ 4.04[C] (2014-2 Supplement)......................................................................9, 18

S. Rpt. No. 345, 99th Cong. 2d Sess. 13 (1986) ...........................................................7

# Introduction

This Court raised fundamental issues about the False Claims Act (FCA) in its order requesting supplemental briefing. *See* ECF 461. As this Court correctly explained, the FCA's plain language prevents Relators from amending pleadings, adding defendants, and asserting independent claims after the Government has intervened. *Id.* at 10. That plain language should be followed here given the way Relators have pursued their case. *See generally Herbert v. Nat'l Acad. of Scis.*, 1992 U.S. Dist. LEXIS 14063, *23 (D.D.C. Sept. 15, 1992) (sanctioning *qui tam* plaintiff for misusing "the *qui tam* provisions for the purposes of harassment" by "heaping some new allegation of wrongdoing or some new theory of the case onto the pile" "[e]ach time the defendant mount[ed] a defense to the claims against it"). As detailed below, this Court should limit Relators' participation to the claims pursued by the Government.

# Procedural Background

Relators filed their initial complaint under seal on January 3, 2013. ECF 1. They named as defendants Stevens-Henager College (SHC), California College San Diego (CCSD), CollegeAmerica Denver (CAD), and CollegeAmerica Arizona (CAA). The complaint alleged violations of two Title IV requirements as the basis to support FCA claims: first, that all Defendant Schools paid bonuses to admissions consultants under a written bonus plan (PD 85R) that violated the incentive compensation ban (ICB) (ECF 1 at ¶¶105-84, 209-50); second, that SHC submitted false information to its accreditor, ACCSC (ECF 1 at ¶¶185-208, 251-262).

Approximately eight months later Relators amended their complaint to add Defendants Carl Barney and Center for Excellence in Higher Education (CEHE). ECF 11 ("Am. Compl."). Relators also expanded the scope of their allegations and included three additional theories of

falsity directed only to SHC—violations of the Department of Education's attendance-taking (Am. Compl. ¶¶ 270-78), academic-progress (Am. Compl. ¶¶ 279-90), and recordkeeping requirements (Am. Compl. ¶¶ 291-294).

The Government intervened in the action another eight months later. It filed a complaint in intervention naming only two defendants: SHC and CEHE. *See* ECF 41. And having had the benefit of nearly 15 months to investigate Relators' fraud allegations, the Government alleged only one factual basis for its FCA claims: that between July 1, 2007 and July 1, 2011, SHC made claims to the Department of Education that it knew to be false because its completion bonus plan (PD 85R) violated the ICB. *See* ECF 41 at ¶ 66. The Government specifically chose not to pursue additional claims or name CAD, CAA, CCSD, or Carl Barney as defendants.

Relators filed their Second Amended Complaint shortly after the Government intervened. ECF 52 (SAC). Purporting to comply with 31 U.S.C. § 3730(b)(2)'s filing requirements, Relators filed portions of the SAC that "alleged violations of the federal [FCA] never before set forth in any prior complaint" under seal. *See* ECF 50. As relevant here, Relators added allegations that Defendant Schools violated the 90/10 requirement. *See* ECF 86 ¶¶ 294-299 (unredacted SAC). Relators also further expanded the scope of their accreditation claims to include Defendants CAD, CAA, and CCSD—though, unlike their 90/10 allegations, Relators did not file those allegations under seal and did not disclose the material evidence supporting those allegations to the Government, denying the Government an opportunity to investigate the allegations before deciding whether to intervene. *Compare* Am. Compl. at ¶¶ 378-382 and 383-87 (alleging FCA violations against SHC based on false claims of compliance with accrediting standards) *with* SAC at ¶¶ 424-28 and 429-33 (alleging FCA violations against all Defendant Schools based on false

claims of compliance with accrediting standards). On September 4, 2014, the Government declined to intervene in the new claims set forth in Relators' SAC. *See* ECF 84.

Relators moved for leave to file a third amended complaint just two months after the Government declined to intervene in the 90/10 allegations. ECF 114. Their stated purpose was "to narrow and streamline the scope of the allegations and eliminate two theories of falsity from the SAC: Defendant Schools' violations of the attendance-taking and academic-progress requirements."[1] ECF 115 at 6. Specifically, Relators explained that they "never intended to pursue those theories" but had included them in their Am. Compl. "at the Government's requests." *Id.* at 6. Citing the Government's decision not to intervene in those theories, Relators explained that they "wish[ed] to eliminate them and focus on [what they described as] the three remaining and more substantial theories." *Id.* Relators attached as an exhibit to their motion a proposed third amended complaint that eliminated both theories. *See* ECF 115-1.

Some six months later, following a transfer of venue, this Court granted Relators leave to file a third amended complaint (TAC). *See* ECF 173. Filed on June 5, 2015, the TAC is roughly 50 pages and 90 paragraphs longer than the proposed third amended complaint Relators attached to their motion for leave. *Compare* ECF 175 (545 paragraphs) with ECF 115-1 (455 paragraphs). And despite representing that they would eliminate theories of falsity related to violations of attendance-taking and academic-progress requirements, Relators' TAC expanded those theories to include CAD, CAA, and CCSD. *See* ECF 175 at ¶¶ 78-95, 319-60.

---

[1] Although Relators' memorandum referenced violations by Defendant Schools of the attendance-taking and academic-progress requirements, Relators' Am. Compl. and SAC only reference SHC. *See* Am. Compl. ¶¶ 270-78 (SHC attendance-taking), 279-90 (SHC academic-progress), 291-294 (SHC recordkeeping); SAC ¶¶ 300-08 (SHC attendance-taking), 309-21 (SHC academic-progress), 322-25 (SHC recordkeeping).

This Court later granted in part and denied in part Defendants' motion to dismiss Relators' TAC. *See* ECF 245. Among other findings, this Court read Relators' TAC to allege FCA claims spanning 2002 to 2011. *See Id.* at 2-4, 4-5 n. 3, 11 n.6. This Court also clarified that the TAC alleged "companywide" violations of the ICB under PD 85R but alleged only isolated examples of non-ICB violations at "particular campuses." *Id.* at 35.

Despite this Court's clear limiting language, Relators spent much of the next year issuing broad discovery as though they had alleged companywide allegations regarding practices continuing to the present under each theory of falsity. *See, e.g.*, ECF 349 (briefing on the proper scope of discovery). Once in discovery, Relators served 189 separate discovery requests seeking documents dating from the mid-1990s to the present. *Id.* Relators simply ignored this Court's clear finding, describing it as a simple misreading of the TAC, though they never asked this Court to reconsider the language of its order. They simply fought to compel oppressive discovery under their claim that this Court erred. *See Id.* The Government meanwhile expressed no opinion on the proper scope of discovery for Relators' separate claims.

Those discovery disputes overlapped with Defendants' efforts to stay discovery pending this Court's reconsideration of its dismissal order in light of *Universal Health Servs. v. U.S. ex rel. Escobar*, 136 S.Ct. 1989 (2016). *See* ECF 261 (Recon. Mot.); ECF 289 (Stay Mot.). Plaintiffs contested Defendants' reconsideration and stay motions and pushed ahead for further discovery under this Court's initial dismissal order. The Government described this as its strategic choice. *See* Nov. 15, 2017 Hr'g Tr. at 30:2-3. And that decision held for almost a year until the Government and Relators for the first time filed motions requesting reconsideration *after* this Court held a

4

hearing on Defendants' motion for reconsideration. By then, Plaintiffs joined Defendants in requesting the Court stay discovery pending reconsideration. *See* ECF 390.

On March 30, 2018, this Court entered an order granting in part and denying in part the parties' respective motions for reconsideration. ECF 417. The Court also dismissed Relators' TAC without prejudice and ordered Relators to file an amended complaint. *Id.* at 41. Relators' Fourth Amended Complaint (FAC), like each prior iteration, again expanded the scope of Relators' allegations and included new theories of falsity. *See* ECF 425. Specifically, Relators alleged that SHC, CAD, and CCSD fraudulently induced the Department of Education to execute program participation agreements (PPAs) in January 2013.[2] *Id.* at ¶¶ 217, 220, 224. Relators also included new claims that Defendant SHC violated the ICB based on bonuses paid to enrollment advisors who worked for Independence University and post-safe harbor bonuses paid to online admissions consultants. *Id.* at ¶¶ 83-91 (enrollment advisors), 120-27 (post-safe harbor).

Rightly concerned with Relators' repeated amendments to expand the scope of their allegations and include additional factual claims, this Court requested the following supplemental brief. *See* ECF 461 at 12.

---

[2] Relators explained in their response to Defendants' Motion to Dismiss that they purposefully left out CAA's 2013 PPA because they lacked specific factual allegations supporting fraudulent inducement. *See* ECF 450 at 21 n.7. Yet Relators express in the very next sentence their intent to "develop evidence [that CAA fraudulently induced the 2013 PPAs] in discovery." *Id.* This has been the consistent theme of Relators' litigation: using discovery as a fishing expedition in an effort to create causes of action.

## Argument

1.   **Nothing in the FCA suggests *qui tam* plaintiffs may file amended complaints adding new defendants and fraud allegations after the Government intervenes.**

The FCA's plain language requires the Government to conduct any action in which it intervenes. *See* 31 U.S.C. § 3730(b)(4)(A). Although any person can *initiate* an FCA action, the statute makes it clear that the Government is responsible for *prosecuting* an action once it intervenes. *See Id.* Simply put, "there is [only] one claim [in an FCA action], the government's, pursuable either by the *qui tam* relator on behalf of the government, or by the government on its own behalf." *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998).

This Court's order is correct that Relators lack authority under the FCA "to amend pleadings, name new defendants, and assert additional causes of action" after the Government has intervened. *See* ECF 461 at 10. "The plain language of the statute makes clear that intervention serves to make the Government a party to the entire suit, not just certain claims or causes of action." *U.S. ex rel. Estate of Robert Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570, 577 (D.R.I. 2017). For that reason, "when the Government intervenes in a *qui tam* action, the Act makes it clear that the Government is charged with pursuing litigation and the relator must yield to the Government's assumption of the responsibility to litigate the action." *U.S. ex rel. Swensen v. McDonnell Douglas Helicopter Co.*, 2001 U.S. Dist. LEXIS 26658, *7-8 (D. Ariz. July 25, 2001). In short, "once the government has intervened, the relator has no separate free-standing FCA cause of action." *In re Pharm. Indus. Average Wholesale Price Litig.*, 2007 U.S. Dist. LEXIS 89835, *17 (D. Mass Dec. 6, 2007).

Although many courts have allowed *qui tam* plaintiffs to proceed on independent claims after the Government has intervened, they have not squared that decision with the FCA's plain

language. *See, e.g., U.S. ex rel. Mallavaru v. Acadiana Cardiology, LLC*, 2010 U.S. Dist. LEXIS 104718 at \*22-23 (W.D. La. Aug. 16, 2010) (permitting relator to proceed on claims in which government did not intervene despite acknowledging that the FCA's plain language "do[es] not provide for a 'partial intervention'"). And simply put, that view of the government and *qui tam* relators as co-equal plaintiffs does not align with the FCA's clear vision of the government being in control of the litigation. 31 U.S.C. § 3730(b)(4)(a) (if the Government intervenes "the action shall be conducted by the Government"); *see also U.S. ex rel. Einstein v. City of New York*, 556 U.S. 928, 932 (2009) (stating that the Government has primary responsibility for prosecuting the action upon deciding to intervene).

In addition, the FCA's plain language is consistent with the underlying legislative history of the 1986 amendments. Congress strengthened the *qui tam* provisions to allow relators an ongoing role in litigation basically as an "accountability procedure" to keep pressure on the Department of Justice to "perform[] its obligation" to prosecute cases in which it intervenes. *See* S. Hrg. 99-452 at p. 103 (Sept. 17, 1985) (witness testimony of John Phillips in response to questioning of bill sponsor Senator Grassley).

But nothing in the legislative history suggests that Congress contemplated—let alone endorsed—the notion that *qui tam* plaintiffs would pursue *independent* FCA claims side-by-side with the Government. *See* S. Rpt. No. 345, 99th Cong. 2d Sess. 13 (1986) ("The bill also allows a *qui tam* [plaintiff] increased involvement in suits brought by the relator *but litigated by the Government*.") (emphasis added). And nothing in the FCA supports the notion that the Government and *qui tam* plaintiffs can pursue separate interests in the same litigation.

Finally, this Court correctly identified critical structural gaps that form in the FCA if *qui tam* plaintiffs are permitted under the FCA to separately litigate claims the Government does not pursue. *See* ECF 461 at 6-9. Key among them is the erosion of the "mechanism [Congress adopted to] temper[] the overenthusiastic citizen prosecutor"—the requirement that the qui tam plaintiff pay the defendant's costs of fending off a frivolous *qui tam* suit. *See* H. Hrg. 99-48 at p. 260 (Feb. 5-6, 1986) (written testimony of witness Frank Menaker, Jr.). As this Court noted, § 3730(d)(4) exposes *qui tam* plaintiffs to attorney's fees and costs incurred by defendants only if the Government declines to intervene in the action. 31 U.S.C. § 3730(d)(4).

The purpose underlying this provision is undermined, however, if the Government's decision to intervene in one claim against only one defendant shields *qui tam* plaintiffs from exposure to attorney's fees for frivolous claims Relators may add in subsequent amended complaints. But the purpose is served if the Government's responsibility over the action after intervening stops *qui tam* plaintiffs from filing amended complaints naming new defendants and asserting additional theories of liability that only serve to increase litigation costs. *See generally U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998) ("The government plainly could not recover $3 million on a $1 million invoice based on faked tests, and then recover another $3 million on the same invoice because the goods supplied had not been up to specifications.").

The FCA's plain language establishes that the Government is charged with pursuing litigation once it intervenes in an action and Relators must yield to the Government's assumption of that responsibility to litigate the action. Because Relators' have no free-standing FCA cause of action, their post-intervention complaints lack legal effect.

8

2.    **If the Court finds that Relators can file amended complaints adding parties and claims after the Government intervenes, it should strictly enforce § 3730(b) and dismiss claims that were not initially filed under seal.**

Relators' multiple attempts to amend their complaint after the Government intervened, not simply to describe with greater particularity the claims already alleged, but to bring new claims against an expanded class of defendants raises serious FCA concerns. *See* John T. Boese, Civil False Claims and Qui Tam Actions § 4.04[C] at 4-230.1 (2014-2 Supplement) ("Boese"); *see also U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[A]llowing a *qui tam* relator to amend his or her complaint after conducting further discovery would mean that the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action.").

The FCA requires *qui tam* plaintiffs to comply with certain mandatory filing requirements. The *qui tam* plaintiff must (1) provide the Government with a copy of the complaint and written disclosure of substantially all material evidence and information the person possesses and (2) file the complaint under seal for at least 60 days. 31 U.S.C. § 3730(b)(2). Compliance with those requirements allows the Department of Justice to investigate the allegations and consult with any relevant agencies "so that the United States may make an informed decision about whether to intervene in the qui tam action." *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011). The failure to comply with this filing requirements is grounds for dismissal with prejudice. *See, e.g., U.S. ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 682 (E.D. Va. 2011).

Here, Relators have alleged *new* claims in each complaint filed after the Government intervened without complying with the FCA's filing requirements.[3] *See, e.g., Id. at* 683-84 (stating

---

[3] As noted above, Relators acknowledged that their SAC included "additional alleged violations of the federal False Claims Act never before set forth in any prior complaint" and filed

that amended *qui tam* complaints raising new allegations of fraud must be filed under seal). Most recently, Relators' FAC added fraud theories based on PPAs Defendant Schools executed in January 2013. *See* ECF 425 at ¶¶ 217, 220, 224 (alleging that Defendants SHC, CAD, and CCSD fraudulently induced PPAs in January 2013); *see also* Nov. 15, 2017 Hr'g Tr. at 16:4-5 (this Court noting that Defendants' 2013 PPAs were not at issue under an earlier iteration of Relators' complaint). Relators' FAC also included two additional theories of falsity against SHC based on bonuses paid to online admissions consultants under compensation plans distinct from PD 85R. *See* FAC ¶¶ 83-91 ("Online AC Bonus Plan"); ¶¶ 120-127 ("$60K Club"). Those substantial amendments to Relators' fraud allegations were not filed under seal. Nor did Relators provide written disclosures of substantially all material evidence and information supporting those allegations to the Government. *See* FAC ¶ 400 (Relators' last written disclosure provided on May 13, 2014, the same day Relators filed the SAC).

Because Relators' post-intervention complaints include new fraud theories and allegations, they violate the FCA's filing requirements, and those theories and allegations should be dismissed with prejudice. *See Davis*, 766 F. Supp. 2d at 684; *U.S. ex rel. Halegoua v. Freed, Kleinberg, Nussbaum, Fiesta & Kronberg M.D.*, 2016 U.S. Dist. LEXIS 103498 *4-6 (E.D.N.Y. Aug. 5, 2016).[4]

---

their 90/10 claims under seal pursuant to 31 U.S.C. § 3730(b). *See* ECF 50 (requesting leave to file the SAC under seal). But Relators' SAC also expanded the scope of its allegations and included new theories of falsity against CAD, CAA, and CCSD. Those new claims were never filed under seal, and Relators did not provide written disclosure of all material evidence and information supporting those allegations to the Government, denying the Government its mandated period to investigate those allegations before deciding to intervene. *See* 31 U.S.C. § 3730(b)(2).

[4] *See also U.S. ex rel. Wilson v. Bristol Myers Squibb*, 2011 U.D. Dist. LEXIS 63714, *7 (D. Mass. June 16, 2011) ("To the extent that the TAC raises different allegations it violates the *qui tam* filing and service requirements."); *U.S. ex rel. Estate of Cunningham v. Millennium Labs of Cal.*, 2014 U.S. Dist. LEXIS 10312, *6-7 (D. Mass. Jan. 28, 2014) (denying amendment because the *qui tam* plaintiff's complaint "include[d] new allegations about events after this lawsuit was filed");

3.      **This Court has wide discretion to condition Relators' participation in this action under 31 U.S.C. § 3730(c)(2)(D)—including by dismissing Relators' FAC and limiting Relators to the claims in which the Government has intervened**.

  3.1      **This Court has discretion to limit Relators' participation in any manner it deems necessary to prevent undue burden on or unnecessary expense to Defendants.**

Section 3730(c)(2)(D) gives this Court wide discretion to limit Relators' continued participation if their unrestricted participation would cause Defendants "undue burden or unnecessary expenses." 31 U.S.C. § 3730(c)(2)(D) (authorizing the court to "limit the participation by the [relator] in the litigation"). Indeed, numerous courts have dismissed *qui tam* complaints upon finding that duplicative claims would expose defendants to the unnecessary burden and expense of litigating the same issue twice. *See, e.g., U.S. ex rel. Raggio v. Jacintoport Int'l LLC*, 2013 U.S. Dist. LEXIS 80091, *6 (D.D.C. June 7, 2013).

There is limited authority addressing § 3730(c)(2)(D) beyond that specific situation. Still, § 3730(c)(2)(D) on its face gives this Court wide discretion to limit the participation of *qui tam* plaintiffs whose unrestricted participation will cause defendants undue burden or unnecessary expense by significantly expanding the class of defendants, the fraud allegations, and the relevant timeframe at issue. *See generally U.S. ex rel. Roby v. Boeing Co.*, 995 F. Supp. 790, 796 (S.D. Ohio 1998) (implying that a *qui tam* plaintiff's pursuit of "a separate theory" could cause defendants undue burden or unnecessary expense).

The underlying legislative history affirms § 3730(c)(2)(D)'s plain language. That history explains that the final language Congress passed, which tracked the Senate-passed bill, actually "narrowed somewhat [the *qui tam* plaintiff's rights] over the original House-passed bill" by

---

*U.S. ex rel. Knight v. Reliant Hospice Inc.*, 2011 U.S. Dist. LEXIS 36813, *12 (D.S.C. Apr. 4, 2011) (noting fraud allegations concerning a "different period of time" in amended complaint).

authorizing courts "to limit the role of the *qui tam* plaintiff in the litigation." *See* 132 Cong. Rec. H. 9382 (1986). The earlier House-passed bill lacked that language and had defined the rights of *qui tam* plaintiffs by express reference to the rights of an intervenor of right under FRCP 24(a). *See* H. Rpt.  No. 660, 99th Cong. 2d Sess. (1986).

It was understood even then that courts could impose conditions or limitations on the participation of intervenors of right by limiting them to the proceeding as it stood and by denying requests to enlarge the issues. *See, e.g., Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) (stating that "one of the most usual procedural rules is" limiting an intervenor to the "proceeding as it stands" and disallowing an intervenor to "enlarge those issues"). [5] In other words, this Court would have had discretion under the broader House-passed bill to limit Relators' efforts to expand the issues in the case. It certainly has the authority under § 3730(c)(2)(D)'s express language to put limits on Relators' active participation during the litigation sufficient to ensure that Defendants do not suffer undue burden or unnecessary expense, including by dismissing Relators' FAC.

---

[5] *See also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party.") (Brennan, J., concurring); *Trbovich v. UMW*, 404 U.S. 528, 537 (1972) (limiting union member's intervention to "claims of illegality presented by [the Secretary of Labor's] complaint"); *Macomb Interceptor Drain Drainage Dist. v. Kilpartick*, 2012 U.S. Dist. LEXIS 63725, *21-22 (E.D. Mich. May 7, 2012) (denying intervenor's request to file complaint adding new parties and additional claims and limiting intervenor to the issues contained in the original complaint); *Forest County Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 16 (D.D.C. 2016) (same); *United States v. Dekalb County*, 2011 U.S. Dist. LEXIS 154837, *31 (N.D. Ga. Oct. 11, 2011) (same); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 21 (D.D.C. 2010) (same).

### 3.2 The Court should limit Relators' participation to the fraud allegations pursued by the Government.

Here, Relators' continued unrestricted participation is causing and will continue to cause Defendants undue burden and unnecessary expense.[6] This Court should accordingly limit Relators' participation, either to the single claim in which the Government intervened or, at most, to Relators' core claim that Defendant Schools violated the ICB by paying admissions consultants bonuses under PD 85R. *See U.S. ex rel. Brooks v. Stevens-Henager College, Inc.*, 2014 U.S. Dist. LEXIS 92562, *2 (D. Idaho July 7, 2014) (describing Relators' "central allegation [] that [SHC] and its affiliated schools pay admissions consultants hefty bonuses").

In the first place, Relators' numerous amendments have greatly expanded the scope of this action—introducing new fraud theories, adding numerous defendants, and expanding the relevant timeframe. *See, e.g., Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (noting that courts typically find prejudice in circumstances when amendments raise new claims and factual issues). The undue burden caused by Relators' frequent amendments is particularlty acute for CAD, CAA, and CCSD, whose involvement, at the time the Government intervened, had been limited to Relators' central ICB claim. Relators' susbequent amendments have caused (and will continue to cause) those Colleges undue burden and unncessary expense defending against evolving fraud clams. Consider simply the effect in discovery of Relators' non-ICB claims addressing recordkeeping, which will require student-by-student file review to show compliance

---

[6] Because this supplemental brief is focused on specific legal questions and is being filed in connection with Defendants' motion to dismiss, Defendants have not provided formal evidence of the increased cost they have borne because of Relators' independent claims, including attorney billing, ESI processing, and discovery cost information. Defendants will provide such evidence if desired by the Court.

13

with the Department's academic-progress and attendance-taking requirements.[7] *See Minter*, 451 F.3d at 1208.

More broadly, Relators' unrestricted participation during the course of litigation has resulted in, and will continue to result in, harassment and has caused, and will continue to cause, Defendants undue burden and unnecessary expense. *See* 31 U.S.C. 3730(c)(2)(D).

First, Relators have not adequately alleged their non-ICB claims despite numerous opportunities. At each chance, rather than correct those pleading deficiences, Relators have looked to amend their complaint with an eye toward expanding the scope of their claims. Relators' FAC, for example, expanded the scope of Relators' claims, included new theories of falsity, and did nothing to address the "significant problems" that led this Court to dismiss the TAC. *See* ECF 417 at 41.

Second, Relators' non-ICB claims are the sort of parasitic litigation Congress feared when it expanded the *qui tam* provisions in 1986.[8] *See, e.g., U.S. ex rel. Mistick PBT v. Housing Auth.*, 186 F.3d 376, 400 (3d Cir. 1999) (identifying as one primary aim of the 1986 Amendments the goal of "discouraging parasitic *qui tam* actions that simply take advantage of information already in the public domain"). In large measure, Relators' non-ICB claims are based on factual information

---

[7] In addition to the physical file review, the ESI associated with Relators' non-ICB claims is significant. By way of example, the total ESI collected from Defendants' academic departments (i.e., excluding admissions, financial aid, and management) nearly equals the combined ESI for admissions and financial aid (1.73 terabytes and 1.87 terabytes, respectively). And to date, proposed search terms related to Relators' student record allegations have naturally produced more hits in the processed ESI than Relators' ICB-specific terms. This  is a "natural" result, in that search terms related to student records (e.g., "grade" or "attend" within 100 hundreds words of "record" or "report") fall right into the wheelhouse of any college's day-to-day operations.

[8] *See* ECF 417 at 39 n.20 (noting that Relators' TAC "copied wholesale entire portions of the United States' complaint [in another case], changing only dates and the names of the parties.").

disclosed in an unrelated state lawsuit. Counsel for Relators physically sat in on those proceedings. Indeed, Relators' TAC and FAC frequently reference or quote testimony from that proceeding. *See, e.g.*, FAC ¶¶ 185-95. It may be true that nothing in the FCA prevents Relators from relying on such information.[9] *See U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 2187, *21 (S.D.N.Y. Jan. 6, 2015) (explaining that accusations disclosed in state court qualified as public disclosures under the FCA's pre-2010 public disclosure but not after amendment in 2010). Still, Relators' course of conduct is not what Congress intended the *qui tam* provisions to incentivize. *See U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991) ("One theme recurring through the legislative history in 1985 is the intent to encourage persons with *first-hand knowledge* of fraudulent misconduct to report fraud.") (emphasis added).

Relators have also prosecuted their separate claims in other vexatious ways. As an example, Relators have engaged in significant self-help discovery to develop factual allegations about non-SHC defendants and campuses, including acquiring nearly 100,000 documents associated with the custodial email account of CEHE's former Director of Human Resources—the contents of which go far afield of any issue in this action and include personal employee information.[10]

Third, Relators have pursued discovery of their expansive claims for the purpose of harrassment. Consider, as one example, the subject of one of Relators' earliest discovery motions. Relators moved to compel Defendants to produce all faculty personnel reports (FPRs) prepared

---

[9] Defendants reserve the right to file motions asserting that Relators' claims are barred by the public disclosure bar where appropriate, based on the facts developed in discovery.

[10] Relators have refused to answer interrogatory requests from Defendants about how Relators acquired that email.

for every instructor the Colleges employed over a twenty-year period. *See* ECF 303 (joint stipulation filed with Magistrate Judge Furse). Defendants had earlier objected to Relators' requests as overbroad and offered instead to phase production based on the specific campuses alleged in the TAC. Magistrate Judge Furse entered an order to that effect and allowed Defendants to comply by making the FPRs available for Relators' inspection at the five campuses specifically alleged in the TAC. *See* ECF 306.  Relators have made no effort to inspect those reports in the 15 months since. That total disregard for the FPRs, once Judge Furse put the onus on Relators to inspect the FPRs in person, suggests Relators' interests had more to do with increasing Defendants' burden of production than the content of the FPRs.[11]

Relators have also expanded the scope of their fraud claims to drive up Defendants' discovery costs. For example, they included in their FAC alleged FCA violations occuring after 2011, knowing that Defendants had date filtered ESI created after December 31, 2012, in reliance on this Court's prior order.[12] *See* ECF 245 at 2 (stating that Relators bring "claims spanning from 2002 to 2011"); *see also* FAC ¶¶ 217, 220, 224 (alleging that Defendants SHC, CAD, and CCSD fraudulently induced PPAs in January 2013); ¶¶ 253-54 (alleging that Defendants made false statements in required management assertions as late as 2015); ¶¶ 234 (alleging that Defendats

---

[11] This example is representative not only of Relators' efforts to exploit their separate claims as a weapon in discovery, but also of the type of discovery disputes Defendants have largely avoided with the Government.

[12] To be sure, Relators dispute when they first alleged that the 2013 PPAs were fraudulently induced. They argue those allegations were made in the TAC. But this Court found that Relators' TAC alleged FCA violations between 2002 and 2011. Hence, Defendants filtered out ESI created after December 31, 2012. And Relators never asked this Court to reconsider that finding. Nor did Relators seek to correct the Court, during the November 15, 2017 hearing, when it reiterated the same point about the TAC. Nov. 15, 2017 Hr'g at 16:4-5 (this Court: noting that Defendants' 2013 PPAs were not at issue under Relators' TAC).

made implied false certifications in G5 Certificaitons in 2014). In other words, Relators expanded the timeframe knowing that it would impose substantial burden and expense on Defendants. Simply processing ESI pertaining to employees hired *after* December 31, 2012 (approximately 1.56 terabytes) would impose considerable costs before Defendants even began reviewing and producing responsive records.

Finally, Relators' status as a party under the FCA does not absolve their repeated efforts to expand the scope of their claims after the Government intervened. *See U.S. ex rel. S. Prawer & Co. v. Fleet Bank*, 24 F.3d 320, 328 (1st Cir. 1994) ("[W]e think it clear that a *qui tam* suit's potential for adding funds to the government's coffers, without more, should not be regarded as constituting useful or propert return to the government.").

Because of the foregoing, this Court should limit Relators' participation to avoid further undue burden and unnecessary expense to Defendants.

## 4.     Recent decisions questioning *qui tam* enforcement justify this Court's concerns about the constitutionality of *qui tam* enforcement.

Defendants acknowledge the Tenth Circuit's decision in *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157 (10th Cir. 2001), which held that the FCA's *qui tam* provision satisfied the sufficient control standard articulated in *Morrison v. Olson*, 487 U.S. 654 (1988), and therefore did not violate the Take Care Clause, at least where the Government intervened. Still, recent decisions questioning *qui tam* enforcement and gaps in *Stone*'s analysis raise concerns about the constitutionality of *qui tam* claims.

First, the Tenth Circuit's conclusion in *Stone* that the executive branch retains sufficient control over *qui tam* litigation to fulfill its constitutional duty undervalues "the encroachment on the exclusive function of the executive branch resulting from the congressional grant to the relator

of power to initiate suits in the name of the United States." Boese at 4-398. Indeed, *the qui tam* provisions allow relators far greater interference with the executive branch than did the Ethics in Government Act upheld in *Morrison v. Olson*. Under the Ethics in Government Act, the Attorney General decided when an independent counsel would be appointed. *Morrison*, 487 U.S. at 696. And the scope of the independent counsel was defined by reference to the facts submitted by the Attorney General when requesting an appointment. *Id.*

In contrast, the executive branch has no control over the initiation of *qui tam* litigation or the breadth of a *qui tam* plaintiff's claims. Indeed, the facts of this case cast serious doubt on the *Stone* court's conclusion that "the presence of a *qui tam* relator in the litigation [does not] so hinder[] the Government's prosecutorial discretion as to deprive the Government of its ability to perform its constitutionally assigned responsibilities." *Stone*, 265 F.3d at 1175.

Second, there is "another fundamental difference between the Ethics in Government Act and the [FCA's] *qui tam* provisions." *See Boese* at 4-398.2. "The independent counsel [statute] was intended to address a narrow structural problem—the perceived conflict of interest when the Attorney General is called upon to investigate criminal wrongdoing by his close colleagues within the Executive Branch." *Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. Off. Legal Counsel 207, 230 (1989). "Moreover, the device is narrowly tailored to achieve its purpose; it encroaches on the Executive only to the limited extent necessary to protect against a conflict of interest, while retaining Executive control consistent with the objective." *Id.* In contrast, the legislative history underlying the 1986 Amendments to the FCA "shows that Congress was acting out of generalized distrust of, and dissatisfaction with, the way the Executive Branch was carrying out its law enforcement responsibilities . . . ." *Id.*

18

Finally, recent decisions applying *Escobar*'s demanding materiality standard have reinvigorated concerns about the constitutionality of the *qui tam* provisions. Although the Government is loath to admit it, *Escobar* has fundamentally altered how courts understand materiality in FCA cases, placing great emphasis on the government's action. That clarification has led numerous courts to question whether the private enforcement of regulatory violations by *qui tam* plaintiffs truly aligns with a relevant agency's programmatic goals, at least where there is evidence that the relevant agency declined to act despite actual knowledge of the alleged fraud. *See U.S. ex rel. Harman v. Trinity Industries, Inc.*, 872 F.3d 645, 667-68 (5th Cir. 2017); *U.S. ex rel. D'Agostino v. ev3, Inc.*, 845 F.3d 1, 9-10 (1st Cir. 2016); *U.S. ex rel. Ruckh v. Salus Rehabilitation, LLC*, 2018 U.S. Dist. LEXIS 5148, *32 (M.D. Fla. Jan. 11, 2018).

In that sense the *qui tam* provision's encroachment on the executive branch's prosecutorial discretion is two-fold. It not only infringes the executive branch's decision to bring action in specific cases but also permits *qui tam* plaintiffs to override executive branch policy decisions. *Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. Off. Legal Counsel 207, 208 (1989) ("The relator is empowered to prosecute the government's claim even when the Attorney General has determined that there is no valid claim or that pursuing the suit is not in the interests of the United States.").

The FCA's *qui tam* provision for those reasons does violate the Take Care Clause. Given the complexity of this issue and its ties to *Escobar,* including the related issues in the pending motions to dismiss, Defendants respectfully request that the Court provide an opportunity for oral argument.

**5.    The Government has demonstrated little oversight of Relators' prosecution of their separate claims.**

Defendants share the Court's concern about the Government's oversight over the way Relators have prosecuted their separate claims but lack sufficient knowledge to address the Court's request for briefing on this issue. *See* ECF 461 at 13. At various times, Defendants have requested information about the Government's oversight of Relators' claims but have not received substantive responses from the Government or Relators. *See* ECF 384 at 6, n.2 (describing Defendants' effort to confirm Relators' claim that the Government barred them from timely filing a motion for partial reconsideration).[13] Whatever oversight the Government has exercised over Relators' prosecution of their separate claims is within Plaintiffs' exclusive control. Defendants note only that the Government has largely expressed no opinion as to the merits of any discovery disputes involving Relators' separate claims.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court (1) strictly construe the FCA's filing requirements and dismiss those claims Relators failed to file under seal and (2) further limit Relators' participation to the claims pursued by the Government or, in the alternative, to no more than Relators' central claim that Defendants paid impermissible bonuses under PD 85R.

---

[13] Defendants have also issued discovery requests to determine the extent to which the Government has been informed of Relators' independent claims after the date it declined to intervene in those claims. *See, e.g.*, Defendant Barney's 3rd Set of Requests for Production of Documents to Relator Brooks, Request No. 10 ("Any document Relators or Relators' counsel sent to or received from the Department of Justice or Department of Education after April 7, 2014, that relates to Defendants [CAD], [CAA], [CCSD], or Carl Barney."); Defendant SHC's 4th Request for Production of Documents to the Government, Request No. 38 (same).

DATED this 16th day of August 2018.

Snell & Wilmer L.L.P.

_____  _____

Alan L. Sullivan
Paul W. Shakespear

Gombos Leyton, P.C.

  /s/ Steven M. Gombos
Steven M. Gombos
Gerald M. Ritzert

*Counsel for Defendants Stevens-Henager College, Inc.;
California College San Diego, Inc.; CollegeAmerica
Denver, Inc.; CollegeAmerica Arizona, Inc.; Center for
Excellence in Higher Education, Inc.; and Carl Barney*

## Certificate of Service

I HEREBY CERTIFY that on August 16, 2018, I served the foregoing document via the court's CM/ECF electronic filing system to all counsel of record, including the following:

Brandon J. Mark, bmark@parsonsbehle.com
Alissa M. Mellem, amellem@parsonsbehle.com
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
*Counsel for Relators Katie Brooks and Nannette Wride*

Jay D. Majors, jay.majors@usdoj.gov
John W. Black, john.w.black@usdoj.gov
U.S. Attorney's Office
U.S. Department of Justice
175 N. Street, N.E.
Washington, DC 20002

*Counsel for Plaintiff United States of America*

/s/ Steven M. Gombos
STEVEN M. GOMBOS

22