IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE, <br><br>Plaintiffs, <br><br>vs. <br><br>STEVENS-HENAGER COLLEGE, INC., et al., <br><br>Defendants. | Case No. 2:15-cv-00119-JNP-EJF <br><br>Judge Jill N. Parrish <br><br>Magistrate Judge Evelyn J. Furse |

**DECLARATION OF KEVIN SLUPE IN SUPPORT OF THE UNITED STATES' STIPULATED MOTION TO EXTEND THE DISCOVERY SCHEDULE**

I, Kevin Slupe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney in the Office of the General Counsel ("OGC") of the United States Department of Education ("ED"). My official working title is "Special Counsel." I have been employed by ED since March 2014. In connection with my responsibilities within the OGC, I am aware of the above-captioned matter brought by the United States in the United States District Court for the District of Utah (the "Action"). I have coordinated with offices within ED to gather the information necessary to make this declaration in support of the United States' Consent Motion to Extend the Discovery Schedule.

2. As Special Counsel with OGC, my primary duties include advising the General Counsel about technology and information issues arising from Congressional oversight investigations, litigation, law enforcement activities, internal investigations, and Freedom of Information Act ("FOIA") requests.

Case 2:15-cv-00119-JNP-DAO Document 480-2 Filed 09/25/19 Page 2 of 4

3. In order to advise the General Counsel, I'm required to maintain a working knowledge of the IT systems and configurations used to manage ED's electronically stored information (ESI) and understand how these systems and configurations are used to support ED's legal responsibilities related to ESI.

4. My duties also include: (1) managing the technology tools used to collect, process, review, and produce ESI; (2) overseeing all matters requiring large-scale ESI review using ED's eDiscovery Platform ("eDP system"); (3) training OGC attorneys and other Department personnel on the capabilities and limitations of the technology available for responding to large-scale ESI requests; and (4) advising OGC attorneys and other Department personnel on best practices applicable to the collection, processing, review, and production of ESI pursuant to Congressional oversight investigations, litigation, law enforcement activities, internal investigations, and FOIA requests.

5. In connection with my knowledge of the Action, I am aware that Defendants Stevens-Henagar College, Inc. and the Center for Excellence in Higher Education (collectively, "Defendants") have submitted certain document requests to the United States seeking documents from ED. Such document requests seek information that require ED to gather data going back at least until 2002.

6. In response to these document requests, the United States has identified certain employee and former-employee custodians from which the United States is gathering ESI. I, in coordination with certain offices and individuals within ED, have been responsible for the collection of ESI from these identified custodians. Because the ESI sought goes back until 2002, it is distributed across several different data sources that are not geographically collocated and are managed by different third-party information technology ("IT") contract providers.

- 2 -

7.      In or about late March 2019, ED undertook the final activities required to complete a transition from its IT contract provider, NTT Data Inc. ("NTT"), to new IT contract providers, General Dynamics Information Technology, Inc. and International Business Machines Corporation ("IBM"). This transition included the transfer of ED's primary data assets and eDP system from the data center provided by NTT located in Plano, Texas, to the data center provided by IBM located in Boulder, Colorado. ED's primary data assets house approximately 55 terabytes of legacy data dated between 2009 and 2019. ED's eDP system is an IT solution that supports the preservation, collection, processing, review, analysis, and production of ESI. On average, the eDP system houses approximately 90 different matters stemming from litigation, investigations, oversight, and FOIA requests. This transition has been planned for some time and was unrelated to this case.

8.      The five project stages associated with the data asset and eDP system transfer—namely, planning, design, testing, implementation, and post-implementation—began on June 12, 2019, and concluded on August 21, 2019. The projected completion date for the overall transition is April 2020.

9.      Throughout the data asset and eDP system transfer process, ED's ability to support the collection, processing, review, analysis, and production of ESI was severely curtailed. The impact was felt equally across all ED matters involving large scale ESI production, including those related to litigation, ongoing investigations, and Congressional oversight requests.

10.     In particular, for much of the transfer process, all data housed by the eDiscovery platform was required to remain static to ensure a forensically sound migration. This included ESI related to the custodians responsive to Defendants' document requests. Accordingly, until the transfer was completed, the United States was unable to finalize collection and production of ESI

from the identified custodians. I estimate the ESI relevant to this case that was impacted by the transfer process to total roughly 86 gigabytes of data.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed: September 25, 2019

Washington, DC

*[signature]*
KEVIN SLUPE
SPECIAL COUNSEL
OFFICE OF THE GENERAL COUNSEL
UNITED STATES DEPARTMENT OF
EDUCATION