IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE, <br><br>Plaintiffs, <br><br>v. <br><br>STEVENS-HENAGER COLLEGE, INC., and CENTER FOR EXCELLENCE IN HIGHER EDUCATION, <br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE; GRANTING DEFENDANTS' FIRST MOTION IN LIMINE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION IN LIMINE; AND DENYING DEFENDANTS' THIRD MOTION IN LIMINE** <br><br>Case No. 2:15-cv-00119-JNP-DAO <br><br>District Judge Jill N. Parrish |

Intervenor-Plaintiff the United States and Defendants Stevens-Henager College and Center for Excellence in Higher Education are preparing for trial set to begin on April 21, 2025. Before the court now are four motions in limine—one filed by the United States, ECF No. 592, and three filed by Defendants, ECF Nos. 593, 594, 595. For the reasons below, the court GRANTS the United States' motion, GRANTS Defendants' first motion, GRANTS IN PART AND DENIES IN PART Defendants' second motion, and DENIES Defendants' third motion.

## ANALYSIS

Since the court writes for the parties, it is not necessary to recount the factual background of this case. The court begins with Defendants' motions because resolution of the United States' motion depends on the resolution of Defendants' second motion.

I.  **Defendants' Motions**

   A.  **Motion to Exclude Evidence of Non–PD 85R Payments (Motion in Limine #1)**

As the parties are well aware, this False Claims Act ("FCA") case centers on Defendants' payments to admissions consultants under Procedure Directive 85R ("PD 85R"), a specific policy at Stevens-Henager College in place from 2006 to 2011 for compensating admissions consultants based in part on the number of students who completed at least one year of their programs. The parties agree that the College's on-the-ground practice conformed to PD 85R, and this court has already determined (1) that PD 85R violated the Incentive Compensation Ban ("ICB"), a regulation prohibiting compensation based on the number of students who enroll, because it relied not only on completions but also enrollments, and (2) that PD 85R did not fall within the boundaries of Safe Harbor E, a since-eliminated exception allowing compensation based on the number of students who completed at least one year of their programs (i.e., completion bonuses). *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 174 F. Supp. 3d 1297, 1305–06 (D. Utah 2016).

Now, the purpose of trial is to determine whether the government can satisfy its burden under the FCA of showing that Stevens-Henager College knowingly made a false promise to comply with the ICB, that the College's promise to comply was material to the decision of the Department of Education to execute program participation agreements with the college, and that the College's promise to comply caused the Department to execute the participation agreements. *See United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-cv-00119, 2024 WL 2857885 (D. Utah Mar. 29, 2024). The knowledge issue boils down to whether Stevens-Henager College knew that PD 85R violated the ICB yet continued to award bonuses under it anyway.

In its first in limine, Defendants seek to preclude the government from referencing or putting on evidence of non–PD 85R compensation, bonuses, or other incentive payments. This evidence, as Defendants see it, falls into two categories: non-completion bonuses and prizes allegedly awarded by the manager of the relators in this action, and non-completion bonuses awarded to Stevens-Henager College's directors of admissions.[1] In Defendants' view, such evidence is irrelevant given the parties' agreement that this case centers on the legal import of the PD 85R bonuses, exceeds the parties' Joint Stipulation to Narrow Discovery, ECF No. 488 (Joint Stipulation), and is unduly prejudicial, confusing, and misleading.

The Federal Rules of Evidence broadly consider evidence relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." FED. R. EVID. 401. According to the government, the evidence of non-completion bonuses, prizes, and awards is relevant mostly because Stevens-Henager College's knowledge that these forms of compensation were unlawful makes it more likely that it knew that PD 85R compensation was unlawful.

The court is not persuaded. Evidence that the College knew that the non–PD 85R forms compensation—which appear to have obviously violated the ICB—does not bear on whether the College knew that PD 85R—which arguably could have been lawful due to Safe Harbor E—was also unlawful. The College had sought legal advice regarding PD 85R, and until this court's 2016 ruling on Defendants' motions to dismiss, a genuine question remained as to whether PD 85R fell

---

[1] Originally, Defendants also sought to exclude a third category of non–PD 85R compensation: bonus plans used at Independence University, a separate educational institution not subject to the ICB. During the final pretrial conference, the government stated that it does not plan to introduce evidence of compensation at Independence University, mooting that portion of Defendants' motion in limine.

3

within the safe harbor. *Stevens-Henager*, 174 F. Supp. 3d at 1305. Knowledge about the unlawfulness of compensation schemes entirely unrelated to PD 85R has no probative value for the issue in this case.

That leaves only one other basis for relevance in the government's case in chief: propensity. The logic goes, if Stevens-Henager College was a bad actor in handing out non-completion bonuses, prizes, and awards, then it is more likely to have been a bad actor in compensating admissions consultants under PD 85R. Rule 404(b), however, prohibits propensity evidence of this sort. FED. R. EVID. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

The government resists, arguing that the evidence of non–PD 85R compensation is relevant for rebutting Defendants' good-faith defense. The court is not convinced; once again, the non–PD 85R compensation was entirely separate and carried different legal implications, so Defendants' state of mind with respect to the non–PD 85R compensation does not illuminate Defendants' state of mind with respect to PD 85R compensation.

But even if the evidence is relevant and otherwise admissible, the court finds that its minimal probative value would be substantially outweighed by the danger of unfair prejudice to Defendants and the danger of wasting time with unnecessary minitrials. *See* FED. R. CIV. P. 403. Throughout the government's involvement in this case over the past 11 years, it has consistently signaled to Defendants that it was concerned only with PD 85R compensation, not other forms of incentive compensation (even though it was aware of those other forms of compensation). First, it intervened in the relators' action only as to the claims that PD 85R violated the ICB. ECF Nos. 23, 41. When given an opportunity to amend its claims after the court dismissed the non-intervened

portions of the relators' action, ECF No. 468, at 60, it could have added claims based on non–PD 85R compensation but declined to do so. Then, when asked by Defendants in an interrogatory to "[i]dentify the facts known [to it] about each Defendant's compliance or noncompliance with . . . [the ICB]," the government failed to indicate in any way that it considered non–PD 85R compensation to violate the ICB. ECF No. 630-1, at 17–19. On top of that, the government entered into a Joint Stipulation, which stated that "[t]he dispute between the United States and the Defendants . . . centers upon the legal import of the completion bonuses" and accordingly forbade the parties from "attempt[ing] to introduce evidence for any purpose in this case that contravene[d] th[e] Stipulation." Joint Stipulation at 2. Given these signals, Defendants reasonably expected that trial would concern PD 85R compensation and not other forms of incentive compensation. It would be deeply unjust to force Defendants on the eve of trial to prepare to defend against a whole swath of evidence that they reasonably expected was no longer relevant to the action.

Allowing the evidence of non–PD 85R compensation would also waste time and distract the jury with minitrials. Any probative value the non–PD 85R compensation may have for the issues remaining in the case rests largely on a determination that those forms of compensation were also unlawful and that Defendants knew they were unlawful. They likely were unlawful—patently unlawful, even—but the government would need to prove their unlawfulness at trial, requiring numerous minitrials for each type of non–PD 85R compensation. Even accepting the government's view that it need not prove that non–PD 85R compensation was unlawful, that what matters is merely Defendants' efforts (or lack of efforts) to ascertain its lawfulness, it would be difficult to avoid wading into minitrials. Especially given the government's own recognition that it "does not intend to dwell at trial on these other violations of the ICB," ECF No. 600 at 4, the court deems it proper to exclude the non–PD 85R evidence.

For these reasons, the court GRANTS Defendants' motion to exclude evidence about non–PD 85R compensation.

### B.   Motion to Exclude Evidence of FCA Settlements (Motion in Limine #2)

As noted above, one issue to be resolved at trial is whether the promise to comply with the ICB was material to the decision of the Department of Education to execute program participation agreements with Defendants. To meet its burden on materiality, the government plans to introduce evidence of FCA settlements involving allegations of ICB violations entered into by other colleges and universities. Defendants seek to exclude this evidence on three grounds: irrelevance, risk of unfair prejudice, and Rule 408's bar on settlement agreements.

First, Defendants argue that the evidence of settlements by other institutions is irrelevant because the evidence does not show that ICB violations had actually occurred at those other institutions or even that the Department of Education believed that ICB violations had occurred. Moreover, Defendants press, the claims underlying those settlements were brought by private litigants (relators) or the Department of Justice, so they have no bearing on how the Department of Education viewed ICB allegations in the context of executing program participation agreements.

As the court sees it, whether ICB violations had actually occurred at those other institutions is beside the point; what matters is whether the Department of Education believed that violations had occurred. In the court's view, some of the evidence does suggest that the Department believed ICB violations had occurred. *See, e.g.*, ECF No. 597-1, at 2 ("With respect to the . . . School, the Government Complaint asserts claims . . . alleging that throughout the Covered Period, the . . . School (1) paid incentive compensation to its enrollment personnel based on their success in securing enrollments."). And as this court has already explained, "the fact that the Department of Education has taken corrective action against other schools based on ICB

6

violations . . . support[s] the conclusion that Stevens-Henager [College]'s promises to comply with the ICB were material." *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 305 F. Supp. 3d 1279, 1304 n.16 (D. Utah 2018).

This reasoning, however, applies only to the settlement agreements in those cases where the government alleged only ICB violations and intervened to litigate its allegations. The settlement agreements in cases with no government intervention are irrelevant because they do not indicate how seriously the government took ICB allegations.[2] The settlement agreements in cases where the government alleged violations of the ICB among other rules or regulations are minimally probative because the government's choice to intervene could have been driven largely by the allegations of violations of the other rules; any probative value would be substantially outweighed by the inefficiencies of conducting a minitrial on the government's motivations in a given case with allegations of violations of multiple rules. And the settlement agreements in cases where the government intervened only late in the case (e.g., around the time of settlement) may be relevant, but determining their relevance would require minitrials to assess the level of the government's involvement in the settlement negotiations.

At the pretrial conference, the court ordered the parties to file a document placing the government's proposed exhibits into three categories: (a) no government intervention, (b) government intervention and ICB was one of several rules allegedly violated, and (c) government

---

[2] During the pretrial conference, counsel for the government observed that the FCA allows the government to dismiss or settle an FCA action notwithstanding any objection from the relator. 31 U.S.C. § 3730(c)(2). So, the government argues, its lack of intervention in a given suit brought under the Act by a relator should be an indication that it approves of the action. In the court's view, the government's lack of intervention does not provide a basis to infer either approval or disapproval of the action. That is, the government's lack of intervention ordinarily should be no basis to infer either materiality or immateriality.

intervention and ICB was the only rule allegedly violated. After reviewing the parties' filings, the court determines that only PX093 and PX106 fall into the third category and are therefore relevant under the logic outlined above. PX086 and PX110 may be relevant, but it would be unwieldy to determine because their relevance because their dockets contain mostly sealed entries and the court would need to conduct a minitrial for each, risking juror confusion and wasting time during an already-tight trial schedule. The remaining exhibits are not relevant.

Separately, Defendants' argument distinguishing the Department of Justice from the Department of Education in this context is easy to reject: the Department of Education is responsible for executing program participation agreements, and when it wishes to pursue an enforcement action against an allegedly noncompliant institution, it refers the case to the Department of Justice. So the references in the settlement agreements to the Department of Justice rather than the Department of Education are of no consequence.

Next, Defendants argue that the evidence of settlements with other institutions carries a high risk of prejudice because a jury could improperly infer from the amounts of the settlements that ICB violations must be material or because the settlement amounts could influence the jury's determination on the amount of damages to award. These concerns are valid, and redacting the settlement agreements to hide the settlement amounts would cure the risk of unfair prejudice.

Finally, Defendants invoke Rule 408, which excludes evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim." FED. R. EVID. 408(a). The Rule explicitly allows the court to admit such evidence "for another purpose." FED. R. EVID. 408(b). This Rule, designed to encourage parties to settle their disputes without litigation, bars evidence "only when the evidence is offered to show the following inference: that because a settlement offer was made,

the offeror must be liable, because people don't offer to pay for things for which they are not liable." *In re Donohoe*, 180 B.R. 491, 494 (Bankr. N.D. Ohio 1995). In other words, the Rule "does not . . . cover compromises and compromise offers that do not involve the dispute that is the subject of the suit." *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987). The settlement agreements that Defendants challenge do not concern the dispute that is the subject of this action, so Rule 408 does not bar their admission.

For these reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' motion to exclude evidence of FCA settlements with other institutions insofar as that evidence is used to establish materiality. The government may introduce PX093 and PX106, provided any settlement amounts are redacted, but no other exhibits containing settlement agreements with other institutions.

    **C.**    **Motion to Find Waiver of Attorney-Client Privilege (Motion in Limine #3)**

A motion in limine is an appropriate vehicle to resolve pretrial disputes over whether a privilege exists. FED. R. EVID. 104(a). Here, Defendants argue based on four disclosures by the United States during discovery that the United States has waived attorney-client privilege as to not only those four documents but also the entire subject matter of ICB enforcement by the Department of Education. These four documents are the following:

- Exhibit 16o, ECF No. 535-15—an email exchange from 2012 between Department of Justice attorneys, the Office of General Counsel of the Department of Education, and the Office of the Inspector General at the Department of Education addressing whether Stevens-Henager College's incentive compensation scheme was legal and whether the case should be reviewed for violations of the FCA

- Exhibit A, ECF No. 597-12—email exchange between the then–deputy general counsel for the Postsecondary Office of the Department of Education and several others concerning what conduct the ICB did and did not cover in the context of an ongoing enforcement action against two educational institutions

- Exhibit B, ECF No. 597-13—an email exchange in which several individuals assembled questions to assist the then–deputy general counsel for the Postsecondary Office of the Department of Education to prepare for negotiations with an educational entity believed to have violated the ICB

- Exhibit C, ECF No. 597-14—an email chain recounting a determination in a proceeding concerning an unspecified educational institution, a determination that was subsequently communicated to that institution

The United States argues primarily that it did not waive any attorney-client privilege because the four documents on which Defendants' motion is based were not privileged in the first place.

As the court sees it, there is no meaningful dispute between the parties on the issue of attorney-client privilege. Defendants wish to explore the four exhibits and their topics at trial, and the government does not claim that those exhibits are privileged. Accordingly, the court DENIES this motion as moot, noting, however, that if the government claims attorney-client privilege for a document similar to one of those four during trial, it will be bound by its admission here that the attorney-client privilege does not attach. Whether a given document is similar enough for these purposes is a determination the court will make at the appropriate time during the course of trial.

II. **The United States' Motion**

Given the court's ruling denying in part Defendants' motion to exclude evidence of FCA settlements with other institutions, the government seeks to preclude Defendants from introducing

10

evidence of or making any reference to the FCA's treble-damages and civil-penalties provisions, 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9), on the grounds that such evidence is irrelevant to the jury's role of deciding liability and determining the amount of damages. Not only is such evidence irrelevant, the government presses, but allowing it could also prejudice the government by encouraging the jury to reduce its damages award. In Defendants' view, the evidence of FCA settlements with other institutions unaccompanied by any reference to the statute's treble-damages and civil-penalties provisions risks swaying the jury to award more damages than it otherwise would. Their argument goes, the settlement amounts with other entities reflect the statute's treble-damages and civil-penalties structure (i.e., they were negotiated against this backdrop) and so are higher than what they would have been if the statute did not provide for treble damages and civil penalties. But without knowledge of the statute's structure, they say, a jury might see the higher settlement amounts and increase its own award of damages. Separately, Defendants also argue that testimony about or reference to the statute's structure is relevant to the issue of their knowledge of the ICB violation—that is, the statute's treble-damages and civil-penalties provisions bear on Defendants' decision to seek attorney advice and so undercut the government's claim that Stevens-Henager College knowingly made a false promise to comply with the ICB.

      The court is ultimately persuaded by the government's view on relevance. Initially, note "the general rule that it is error to instruct a jury as to treble damages, attorneys fees, or other court-determined awards that might pervert the jury's damages determination." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231, 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007). In the FCA context specifically, the Supreme Court has explained that "if [the jury] finds liability, its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty." *Cook County v. United*

11

*States ex rel. Chandler*, 538 U.S. 119, 132 (2003). Therefore, "[t]estimony about treble damages or other penalties is not relevant to the jury's determination of liability or damages." *United States v. BlueWave Healthcare Consultants, Inc.*, No. 9:14-cv-00230, 2017 WL 11621328, at *2 (D.S.C. Nov. 20, 2017).

The court is also not persuaded that such testimony is relevant to the issue of Defendants' scienter in this case, or insofar as it is relevant to that issue, its probative value is substantially outweighed by the "risk that a jury could use knowledge of the trebling of damages and statutory penalties as an intimation to keep the damages at a low level, in view of the fact that the amount allowed by the jury would be multiplied by three." *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094, 2017 WL 9889370, at *1 (D.D.C. Sept. 20, 2017). It would be contrary to the purpose of the trebling provision for the jury to reduce its award proportionately. After all, Congress provided for treble damages to permit the government to recover "the costs of investigation, detection, and prosecution, prejudgment interest, the consequential damages of fraud, and the costs of enticing relators to bring suit, all of which are implicated in FCA cases but none of which are otherwise provided for in the statutory scheme." *Miller*, 2007 WL 851868, at *2.

That said, Defendants' concern that the evidence of FCA settlements may encourage the jury to award greater damages than it otherwise would is legitimate. To remedy this concern, the court ORDERS the settlement amounts to be redacted on any settlement agreements that the government intends to introduce consistent with this order.[3] Accordingly, the court GRANTS the

---

[3] The court deems it proper not to redact the administrative-fine amounts, which are highly probative on the materiality issue due to their temporal proximity to the government's discovery of the violations.

United States' motion to exclude evidence about the FCA's treble-damages or civil-penalties scheme.

## CONCLUSION AND ORDER

For the reasons above, the court

- **GRANTS** the United States' motion to exclude testimony about or reference to the FCA's treble-damages and civil-penalties provisions, ECF No. 592;

- **GRANTS** Defendants' motion to exclude evidence of non–PD 85R compensation, ECF No. 593;

- **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude evidence of FCA settlements with other institutions, ECF No. 594—the government may introduce PX093 and PX106, provided any settlement amounts are redacted, but no other exhibits containing settlement agreements with other institutions; and

- **DENIES** Defendants' motion to find waiver of attorney-client privilege, ECF No. 595, as moot.

Signed April 15, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge